## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

### PACER Cover Sheet
### for Electronically Filed Documents

Any data shown here are current as of  06/10/06      . Any element of information on this form,
except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:**       Union Home and Industrial, Inc.

**Case Number:**      04-15755

| Document Information |
| --- |

| | |
| --- | --- |
| **Description:** | Memorandum Opinion in Support of [85-1] Order on Debtor in Possession's Motion to Employ Counsel. |
| Received on: | 2005-04-01 14:21:44.000 |
| **Date Filed:** | 2005-04-01 00:00:00.000 |
| **Date Entered On Docket:** | 2005-04-02 00:00:00.000 |

| Filer Information |
| --- |

**Submitted By:**     James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
UNION HOME AND INDUSTRIAL,
    Debtor.

NO. 11-04-15755 SR

**MEMORANDUM OPINION
IN SUPPORT OF ORDER
ON DEBTOR IN POSSESSION'S
<u>MOTION TO EMPLOY COUNSEL</u>**

The debtor in possession ("Debtor") has filed its Motion
to Employ Counsel ("Application") to employ the Behles Law
Firm, P.C. ("Firm") as its chapter 11 counsel at specified
rates (doc 5). The Application seeks employment of the Firm
under the terms of the retainer and at the rate of $250 per
hour for the services of its senior attorney ("Senior
Counsel"). It is that proposed rate of compensation that is
the primary focus of the decision to be made, although this
decision also addresses the lack of a Rule 2014(a) statement
and certain terms of the employment agreement. The Court will
set aside the employment order already entered (doc 38), and
will partly grant the Application, effective upon the
immediate filing by the Firm of a Rule 2014(a) statement but
retroactive to March 1, 2005, and partly deny the Application.

**Facts:**

The Debtor filed its voluntary chapter 11 petition on
August 9, 2004 (doc 1). The Application was filed August 10,

2004 (doc 5)[1].  The Firm also filed the compensation

disclosure statement required by § 329(a) and Rule 2016,[2] to

which is attached a copy of the Firm's proposed employment

agreement with the Debtor (doc 4)[3].  However, a review of the

docket discloses that the Firm has not filed the verified Rule

2014(a) statement.  At the Court's request for a response or

comment from the office of the United States Trustee ("UST"),

the UST filed the United States Trustee's Limited Objection to

Debtors' [sic] Motion to Employ Counsel (doc 17).  On November

17, 2004, following a preliminary hearing on the Application,

the Court entered an order approving the Firm's employment

effective August 10, 2004, permitting the Firm to bill for

Senior Counsel's services at the rate of $200 per hour,

---

[1] The Application contains no prayer for relief as such,
but that it immaterial.

[2] Unless otherwise specified, all references are to Title
11 of the United States Code and to the Federal Rules of
Bankruptcy Procedure.  This memorandum opinion constitutes
findings of fact and conclusions of law as may be required by
Rule 7052.

[3] A copy of the retainer or employment agreement is also
attached to the Application.  The last page of the employment
agreement is an Exhibit A, setting out the rates for the
services of counsel and paralegals, including the $250 per
hour for Senior Counsel.  Although Exhibit A has approval
lines for signatures of counsel and client, neither counsel
nor the Debtor have initialed or signed.  The Court assumes
that the Debtor is fully aware of this litigation and so the
Court does not take the lack of initials or signatures on the
rate sheet as a material omission.

Page -2-

allowing the Debtor to pay the Firm 75% of its monthly fees
and 100% of its costs on an interim basis (standard practice
in the District of New Mexico), and taking under advisement
the request for an hourly rate of $250 per hour for Senior
Counsel. Doc 38.

In support of the Application, the Firm submitted the
affidavit of Senior Counsel describing her experience and
explaining the characteristics and pitfalls of bankruptcy
practice. The Firm also submitted affidavits from a variety
of local counsel about hourly rates of compensation.[4] The
Court has prepared a summary of chapter 11 counsel rates taken
from the ACE docket[5] for all cases filed from calendar year

---

[4] The bulk of the affidavits and related charts had been
submitted previously in support of the application of Law
Office of George (Dave) Giddens, P.C. to be paid $225 per hour
in another case. In re Mach 2 Machining and Manufacturing,
Inc., No. 11-04-13983 SA. The Court agreed that those
affidavits could be re-used in this case. The affidavits in
the Giddens materials were from Mr. Giddens, William F. Davis,
William J. Arland, III, Paul M. Fish, David H. Kelsey, Senior
Counsel, Charles A. Pharris, Robert A. Johnson, and Ranne
Miller. Additional affidavits were submitted from Messrs
Davis, Arland and Louis Puccini, Jr., and directly addressed
Senior Counsel's experience and abilities for this case. The
latter three affidavits were filed (docs 31, 32 and 40); the
Giddens materials have been treated as exhibits submitted at a
hearing.

[5] ACE (Advanced Court Engineering) is the program of the
United States District/Bankruptcy Court for the District of
New Mexico which is the District's equivalent of the ECF
system of the Administrative Office of the United States
Courts. It is the system which the court staff and all others

Page -3-

2002 through March 30, 2005.[6]  And the Court has taken into account published decisions that address the Firm's or Senior Counsel's fees in other cases and the Firm's performance so far in this case.

Senior Counsel has been licensed to practice law since 1970.  The affidavits established that a number of commercial litigation and bankruptcy attorneys engaged in this district with twenty and more years of experience charge rates of approximately $225 to $275 per hour.[7]  And the three affidavits that specifically addressed Senior counsel's employment in this case said that Senior Counsel's skills are "excellent" and "above average", including in complex bankruptcy and non-bankruptcy cases.

The ACE docket table shows hourly rates that, with the exception of the Furrs case[8], range from a low of $90 to a

───────────────────

use to access case files and to file to those cases.  Thus, the table is based on publicly available documents, of which the Court takes notice pursuant to Fed. R. Evid. 201, and the data and the conclusions drawn can be verified by anyone.

[6] A copy of that table, with comments, is attached to this memorandum as Appendix 1.

[7] Mr. Kelsey practices family law, but at a level that constitutes in good part commercial litigation.

[8] In re Furr's Supermarkets, Inc., No. 11-01-10779 SA (since converted to a chapter 7 case), the Court allowed hourly rates for up to $275 per hour for local counsel and up to $675 per hour for counsel who have a national (or

Page -4-

high of $250 per hour as allowed by Judge McFeeley and $225
per hour as allowed by this judge in one case.

The Firm or Senior Counsel has engaged in a number of
litigated matters concerning its or her fees or related
matters that appear in published or otherwise available
decisions.  These include the following:

Miller v. United States Trustee, 288 B.R. 879 (10th Cir.
BAP 2003) (in Chapter 12 case, affirming hourly rate of no
more than $200 and affirming award for fees for total number
of hours spent confirming the plan); In re Bennett, 283 B.R.

_____

international) practice, such as Skadden, Arps, Slate, Meagher
and Flom, and Pepper Hamilton.  Furr's was a so-called
"megacase" (and not so "mega" at that), with assets of about
$120 million, liabilities of about $500 million and about
19,000 creditors.  There were serious questions what the
relevant market was for professional fees and whether any
single firm in this District had the capacity and expertise to
handle that case.  Nevertheless, one might question whether
those rates, far above the local norm, were proper.  See Ramos
v. Lamm, 713 F.2d 546, 555 (10th Cir. 1983) (in a civil rights
case, the fee rates of the local area should be applied to
lawyers from other areas seeking fees except in unusual
circumstances), cited in Miller v. United States Trustee, 288
B.R. 879, 882 (10th Cir. BAP 2003); Garb v. Marshall (In re
Narragansett Clothing Company), 210 B.R. 493, 498 (1st Cir. BAP
1997) ("The bankruptcy court is required to consider
prevailing market rates in determining the lodestar, based on
usual and customary rates in the jurisdiction", citing Blum v.
Stenson, 465 U.S. 886, 895 (1984) for the proposition that
"reasonable fees" in federal civil rights cases are to be
calculated according to the prevailing market rates in the
relevant community).  In any event, the Court considers Furrs
to have been sui generis in this District, and will not
consider it as a precedent.

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 6 of 46

308 (10th Cir. BAP 2002) (setting out the drawn out conduct of the chapter 12 case and denying the petition for mandamus seeking to disqualify the judge on the grounds, among others, of permitting no more than a $200 hourly rate and of raising sua sponte Debtors' failure to file chapter 12 plan or obtain an extension of time to do so timely); Behles-Giddens, P.A. v. Raft (In re K.D. Company, Inc.), 254 B.R. 480 (10th Cir. BAP 2000) (affirming requirement that Behles-Giddens, P.A. disgorge approximately $40,000); In re Love, 163 B.R. 164 (Bankr. D. Montana 1993) (second DIP attorney fee application for $71,000 in fees and $20,000 in costs denied in full for lack of full disclosure in Rule 2014 statement, actual charge for services exceeded estimate and services benefitted DIP personally rather than estate); and In re Ewing, 167 B.R. 233 (Bankr. D. N.M. 1994) (chapter 7 case in which Senior Counsel represented the debtor; fees of $40,000 sought and $6,500 awarded).

Finally, two components of this chapter 11 case provide a further basis for a ruling.  The Firm's handling of motions to extend exclusivity and to employ an accountant have resulted in a denial of the relief sought in one instance and the unnecessary expenditure of resources by the Firm, the Court, the United States Trustee and a creditor in both instances.

The petition was filed on August 9, 2004 (doc 1). The Debtor's exclusive right to file a plan would therefore expire on December 7, 2004.[9] On December 3, the Firm filed a motion to extend exclusivity through January 8, 2005, and to extend the deadline to confirm a plan through March 7 ("First Exclusivity Motion") (doc 41). By mistake, the Firm failed to file a certificate of service that it had noticed the creditors of the deadline to object to the requested relief and instead filed the First Exclusivity Motion again on December 7 (doc 43). After the deadline for objections to the first extension of exclusivity had expired, the Firm submitted a proposed order extending exclusivity, which order recited that notice had been given. The Court, taking at face value the recitation in the order, did not check the docket, and entered the order on February 9 (doc 53).[10] But before the proposed order approving the First Exclusivity Motion was submitted to the Court, the Firm on January 6, 2005 filed a

---

[9] The Debtor erroneously calculated the exclusive period for filing a plan to end on December 8, 2004, but this error turned out to be immaterial.

[10] To be clear, the Court is not saying that the notice had not been sent, but only that the docket did not reflect that the notice had been sent because the Firm had failed to file a certification of the mailing of the notice. Nevertheless, the Court would not have entered the order until the record had been corrected.

second motion seeking to further extend exclusivity through March 8, 2005, with a confirmation deadline of July 7 (doc 46, complete image at doc 55) ("Second Exclusivity Motion").  On February 15, the Court, having reviewed the docket in connection with the Second Exclusivity Motion and noticing the lack of certification of service for the First Exclusivity Motion, entered an order withdrawing approval of the First Exclusivity Motion for the apparent lack of notice and also therefore denying the Second Exclusivity Motion (doc 58).  On February 17, the Firm promptly filed a motion to set aside the order denying exclusivity (doc 60) and a supporting affidavit (doc 61).  The motion and affidavit stated that notice had been sent to creditors but that by mistake the First Exclusivity Motion had been refiled instead of the certification of service to creditors.  That motion was scheduled for a preliminary hearing for March 7.  Senior Counsel failed to appear at that hearing and later graciously explained that the non-appearance occurred because of a calendaring mistake in her office (doc 75).  In the meantime, March 8 passed without the filing of a plan; on March 9, the Firm filed a third motion for the extension of exclusivity (doc 71).  At a preliminary hearing conducted on March 29 (continued from March 7 to March 21 because of the failure to

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 9 of 46

appear and then to March 29 at the request of the Debtor (docs 70 and 76)), the Court denied the Third Exclusivity Motion because the exclusivity period for filing a plan had already passed by the time the motion was filed. By implication the motion to set aside the order denying the First Exclusivity Motion was also denied as moot. A written order to that effect has now been entered.

On September 27, 2004, the Debtor filed an application to employ Charles R. Jones as accountant for the estate (doc 27).[11] Attached to the application was the proposed employment agreement between the Debtor in Possession and Mr. Jones' firm. The application recites in part in paragraph 6 that "None of the compensation previously received or to be received for services rendered by the applicant in or in connection with this case has been shared with any professional...", but does not describe any specific payments or debts between the Debtor and Mr. Jones or his firm. Mr. Jones filed no verified statement pursuant to Rule 2014 at that time. The notice of the application filed September 27, 2004 (doc 28) recites in part that "Pre-petition fees will not be collected." There is no mention of any pre-petition fees

---

[11] The application was signed by Mr. Jones, the proposed accountant, instead of by the Debtor. Given the disposition of the application, this anomaly is also immaterial.

Page -9-

(debt) incurred by the Debtor to Mr. Jones or his firm in schedule F or in the Statement of Financial Affairs or the amended Statement of Financial Affairs (although a party such as a creditor or the United States Trustee should not be expected to have to look there to find out about payments like this).  On November 10, 2004 the Debtor filed an amended notice, with the same language about pre-petition fees not being collected (doc 36).  On November 12, 2004 an "amended" Rule 2014(a) statement was filed, generically asserting no conflicts of interest and that the firm was disinterested (doc 37).  There was no mention in the statement of any prepetition payment.  It does not appear that Mr. Jones or his firm filed a Rule 2016(a) statement.  At some point the deadline for objections passed with none being filed, and on February 10, 2005 Senior counsel submitted a proposed form of order approving the employment that recited as part of the relief ordered that "[t]he accountant shall not collect any pre-petition fee owed by the Debtor as set forth in the application."  By e-mail on February 11, 2005 (doc 56)[12], to

_____

[12] The date of this e-mail to Senior Counsel does not appear on the copy that was docketed; the Court has obtained it from consulting its e-mail records which are not available generally to the public.  The source of the specific date of the e-mail is relatively unimportant since the specific date is itself immaterial for purposes of this decision.

Page  -10-

which Senior Counsel responded the same day (doc 57), the Court rejected the proposed order on the ground that there had been insufficient disclosure for the employment. The Court also offered the Debtor the opportunity to employ Mr. Jones or his firm by starting the process over again with the filing of an application, a complete verified statement that would provide the full disclosure necessary, and notice to the parties on the mailing matrix. The Court scheduled a preliminary hearing at the request of the Debtor (doc 63), to take place on March 7. That hearing also was rescheduled to March 21 and then March 29, 2005. At the March 29 hearing the Court ordered that Mr. Jones file an amended verified statement that addressed the existence of a prepetition $150 claim against the estate and Mr. Jones' prepetition or postpetition agreement to waive the claim. Upon the filing of the statement and of any amended schedule or statements, the employment of Mr. Jones would be approved. A written order to that effect has now been entered.

**Discussion:**

<u>Failure to file verified Rule 2014(a) statement</u>:

To begin with, the Court has already entered an order employing the Firm at the rates sought in the Application with the exception of the $250 for Senior Counsel. Doc 38. A

problem arises from the fact that, although the Firm appears
to have filed no Rule 2014 statement[13], the form of order
submitted by Senior Counsel and signed by the Court recites
that the Court "finds" that a Rule 2014 statement had been
filed.  In approving the order the Court relied on Senior
Counsel's representation in the proposed order without
independently confirming the representation.  <u>Compare</u> order
withdrawing approval of first motion for extension of
exclusivity, the motion to set aside that order, and the
supporting affidavit (docs 58, 60 and 61 respectively).[14]  Thus

_____

[13] The last sentence of Fed. R. Bank. P. 2014(a) states:
"The [employment] application shall be accompanied
by a <u>verified</u> statement of the person to be employed
setting forth the person's connections with the
debtor, creditors, any other party in interest,
their respective attorneys and accountants, the
United States trustee, or any person employed in the
office of the United States Trustee."  (Emphasis
added.)

[14] The United States Trustee appears not to have
independently confirmed the (non)existence and contents of the
Rule 2014 statement before filing the limited objection (doc
17).  The Court considers it the duty of the United States
Trustee to check for Rule 2014/2016 statements in all non-
trusteed chapter 11 cases (although a quick check of recent
chapter 11 filings shows that counsel in every other case but
one has complied with Rules 2014 and 2016).  To be fair to
that office, the United States Trustee's limited objection was
filed in response to the Court's specific request for a
comment from that office about the requested rate of
compensation.  And obviously the Court itself did not check
the docket before entering the employment order (doc 38), or
indeed until shortly before preparing the final draft of this
memorandum opinion.  Nevertheless, filing a verified Rule

the Court finds itself having entered an employment order when one of the most basic disclosure requirements of employment has not been met. <u>See, e.g.</u>, <u>In re Love</u>, 163 B.R. at 170 (failure to make Rule 2014 disclosure may result in disqualification of counsel altogether).  The lack of the Rule 2014 statement is all the more serious because of the consequences of setting aside the initial employment order (doc 38); unlike the order setting aside the approval of the First Exclusivity Motion, which was entered while it appeared that there was little danger of any other entity filing a plan, setting aside the employment order could have the effect of depriving the Firm of its employment status throughout this case at least until a Rule 2014 statement is filed.  The Court is fully aware, and regrets, that the financial consequences to the Firm could be severe.

It may be that everyone, including the Firm, was inadvertently lulled into thinking that a verified Rule 2014 statement had been filed because of the recitations in the Application that closely resemble a Rule 2014(a) statement.

---

2014(a) statement remains fundamentally and unquestionably the obligation of the professional and no one else.  And accurately representing the status of the filing of such a statement in any order submitted to opposing counsel and the Court remains fundamentally and unquestionably the obligation of the person submitting the order.

And in fact Rule 2014 requires that the professional _and_ the Debtor each certify that no disqualifying connections exist. Fed. R. Bank. P. 2014(a); In re 245 Associates, LLC, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995). However, the employment application, whether signed directly by the debtor or through the debtor's counsel, is signed and filed subject to Rule 9011(b). That certification of good faith is not the equivalent of a "verification". Rule 9011(e) states that "[w]henever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement of verification." Section 1746 provides language that satisfies the requirement: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." Whereas violating Rule 9011(b) may lead to court-imposed sanctions, a false verification could lead to a criminal prosecution for perjury. The difference is not a minor one, and thus the Rule 9011(b) representations in the Application signed by Senior Counsel on behalf of the Debtor cannot substitute for a verified statement from Senior Counsel on behalf of the Firm.

Rule 2014(a) requires that a debtor in possession apply to the court to hire counsel, Land v. First National Bank of Alamosa (In re Land), 943 F.2d 1265, 1266 (10th Cir. 1991), and

failure to do so may result in the attorney being required to return all compensation.  _Id._ at 1267.  The disclosure requirements of Rule 2014 are not discretionary, _Winship v. Cook (In re Cook)_, 223 B.R. 782, 790 (10th Cir. BAP 1998), and "[a]bsent the spontaneous, timely and complete disclosure required by §327(a) and Rule 2014, court-approved counsel proceed at their own risk.  _Id._ at 794.  (Citation omitted.) "At their own risk" can mean disqualification and disgorgement of all fees.  _Id._  _See also_ _Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)_, 210 B.R. 844, 848, 850 (10th Cir. BAP 1997) (same holding for counsel who failed to fully disclose as required by Rules 2016(b) and 2014(a)).  Even a negligent or inadvertent failure to disclose is sufficient to deny fees.  _Id._ at 849.

The failure to file the requisite disclosure along with the employment application means that the application process, so to speak, is incomplete.  That can reasonably be compared with a failure to file an application altogether.  Although other courts, especially outside the Tenth Circuit, may take a more relaxed approach to defects in the application process, the Court believes that using the analogy of the failure to file an application provides a bright line test for parties to assess the status of the employment process and to predict the

consequences.  There is a substantial body of law that
predicts what happens when no employment application has been
filed, even when, as here, the failure to file is a mere
oversight.  E.g., In re Land, 943 F.2d at 1268-69 ("[N]unc pro
tunc employment of professionals is only appropriate in the
most extraordinary circumstances.  Simple neglect will not
justify nunc pro tunc approval of a debtor's application for
the employment of a professional.")  (Citations omitted.)

In consequence, the Court is regretfully compelled to set
aside the order employing the Firm (doc 38).  See Michel v.
Federated Dep't Stores, Inc. (In re Federated Dep't Stores,
Inc., 44 F.3d 1310, 1320 (6th Cir. 1995) (professional could
not continue to be employed when it was an interested person
from the beginning of the case and thus never validly employed
to begin with); Kravit, Gass & Weber, S.C. v. Michel (In re
Crivello), 134 F.3d 831, 837 (7th Cir. 1998) (same); In re EWC,
Inc., 138 B.R. 276, 281 (Bankr. W.D. Okla. 1992) (employment
of person with conflict of interest is void ab initio).
Therefore the Firm's employment application will be denied
until the Firm files a sufficient Rule 2014(a) statement.
Upon the filing of the statement, the Firm may submit an order
on behalf of the Debtor employing the Firm.

The effect of the withdrawal of the employment order

could be to allow the bankruptcy court to weigh the equities in determining what the sanction should be. In re Crivello, 134 F.3d at 837-38 (bankruptcy court had discretion but not obligation to deny all compensation); In re Tomczak, 283 B.R. 730, 736 (Bankr. E.D. Wisc. 2002) ("flexible approach of balancing the needs for sanctions with the inequity which would otherwise result from a complete denial of all fees and disbursements"); In re Combe Farms, Inc., 257 B.R. 48, 55, 56 (Bankr. D. Idaho 2001) (inadequate Rule 2014 disclosure and untimely Rule 2016 filing resulted in two discretionary 10% reductions in the fees requested); In re Glenn Electric Sales Corp., 99 B.R. 596, 599-600, 602 (D. N.J. 1988) ("purely technical" failure to comply with Rule 2014 required revocation of order employing counsel since subjective good faith to comply is irrelevant; equities tipped in favor of disqualification of firm). The Tenth Circuit rule is apparently stricter or more punitive. In re Smitty's Truck Stop, Inc., 210 B.R. at 850 (failure to disclose all potential conflicts warrants a denial of all fees; Tenth Circuit has taken a stricter view of conflicts of interest). However, it is not necessary to decide at this time what exactly the consequences will be of setting aside the order; e.g., whether there should be disgorgement of fees or some other sanction.

Page -17-

What is critical to decide now is whether the Firm can or
should be (re)employed, and the Court has decided that it can
and should, upon compliance with Rule 2014.[15]

Deficiencies of attorney-client agreement:

Portions of the employment agreement between the Debtor
and the Firm, attached to the Application, should be stricken
as contrary to common bankruptcy practice, as follows:

> "Additional deposits may be required from time to
> time.  The failure of Client to pay any additional
> deposit within fourteen (14) days of a request for
> such a deposit shall constitute a breach of this
> agreement.

---

[15] The parties agreed that the matter would be considered
submitted when William Arland filed his affidavit.  Doc 38.
That happened on November 29, 2004.  Doc 40.  Since the Court
had already entered an order employing the Firm and the only
issue was whether Senior Counsel would be receiving the
additional $50 per hour, the Court did not perceive an unusual
urgency to decide this matter, although of course any decision
ought to be made promptly.  In addition to reviewing and
considering the affidavits from counsel, personnel from the
Court's staff and the Clerk's office were assembling the
information that makes up Appendix 1.  Upon discovering and
then confirming the lack of a Rule 2014 statement, the Court
speeded up its work on this decision and has issued it as soon
as reasonably possible after discovering the lack of the Rule
2014 statement.  Nevertheless, upon discovering and verifying
the lack of a Rule 2014 statement, the Court inadvertently did
not notify the Firm of the deficiency immediately.  Although
the Court had no obligation to do so, the Court is still
frustrated that had it immediately notified the Firm, the Firm
might have filed the Rule 2014 statement and thereby reduced
the time during which it was not qualified to be employed.
Since the Court discovered the deficiency some time in March
(to the best of its recollection), the Court will permit the
re-employment of the Firm effective March 1, 2005, if it
promptly cures the lack of the Rule 2014 statement.

"The hourly rates may change from time to time upon twenty (20) days written notice to Client.

"The failure of the Client to give such a notice to Attorneys [of any part of a monthly bill which the Client thinks is unreasonable or in error within twenty days of the date of the bill] shall be deemed an admission of the reasonableness of the charge.

"All fees, gross receipts tax, and costs are due in full within twenty (20) days of the date Client is billed. Failure of Client to pay all sums owing within twenty (20) days after filling constitutes a breach of this agreement. Balances unpaid after thirty (30) days are charged interest at a rate of twelve percent (12%) per annum, compounded monthly.

"Client's...breach of this Agreement [entitles] Attorneys...to terminate the representation...subject only to the Rules of Professional Conduct.

"Attorneys' Charging Lien [in its entirety].

"Disputes [concerning the agreement or billing shall be submitted to court-annexed arbitration in the Second Judicial District Court for the State of New Mexico, County of Bernalillo]."

Hourly rate for Senior Counsel:

Concerning the rates of compensation, 11 U.S.C. §§ 328(a) and 330(a)(3)(A)(E) [sic] respectively provide in relevant parts as follows:

"The trustee, ... with the court's approval, may employ ... a professional person under section 327 ..., on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment,

Page -19-

if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

"In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

One of the values of the last sentence of § 328(a) is that it allows a professional to more reliably estimate what its income will be, knowing that the rate of compensation will almost certainly not be changed. That is a value and prerequisite for the operation of any business, including one that provides professional services. Another value is that it allows the Debtor, the creditors and others to better account for professional fees in making determinations about how to reorganize the debtor's business. See, e.g., In re Love, 163 B.R. at 171 (excess fees denied which considerably exceeded the amount estimated as part of the prepackaged chapter 11 plan which creditors accepted). Thus the Court intends that the rate of compensation approved at the beginning of the employment will ordinarily continue in effect throughout the case with the exception of annual increases that a firm

applies to all of its clients.[16]

Concerning the rates of compensation, the Court does not dispute the affidavits which describe hourly rates exceeding $200 for counsel of twenty or more years of experience. What the affidavits do not include is information from other counsel who do bankruptcy work representing secured creditors who work for flat fees that effectively are far less than $200 per hour. But because those rates are not part of the evidence of record in this matter, the Court will not consider them. However, the Court may rely on the data taken from the case files as set out in Appendix 1, which show a range of rates for bankruptcy counsel in this district that seldom exceed $200 and frequently are less than that. See Miller, 288 B.R. at 883 (trial court properly considered hourly rates of bankruptcy attorneys in its jurisdiction). What the rates are for comparably skilled counsel performing nonbankruptcy work is only one part of the calculation, id. at 882, and not the only or even the primary factor to be considered. Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Commercial Financial Services, Inc.), 298 B.R. 733, 751 (10th

_____

[16] Such increases may only be applied in the bankruptcy case pursuant to Court order following the filing and notice of a supplemental employment application.

Cir. BAP 2003).

A critical part of the calculation is whether the professional is "comparably skilled", or at least exercises skills comparable to nonbankruptcy practitioners. Years of experience per se are not determinative; after all, one attorney can have twenty years of consistently becoming more skilled and another can repeat the first year of practice twenty times.[17] What has happened so far in this case does not demonstrate the skills or case management of an attorney entitled to more than $200 per hour. In fact, the failure to file a Rule 2014(a) statement, an attorney-client employment agreement rife with provisions that run contrary to bankruptcy practice, a record of published cases that demonstrate a number of billing disputes, a months-long brouhaha in this case over exclusivity that ultimately must be denied for failure to meet the Debtor's own deadlines, and the drawn-out process to hire the accountant because of a simple failure of disclosure, coupled with the extra work that those missteps cause other parties and the Court, strongly suggest that $200 per hour is too high. Whether the work has been done by Senior Counsel or by someone under her supervision (or perhaps

_____

[17] Again to be clear, the Court is not saying that Senior Counsel is the functional equivalent of a first-year attorney; indeed, far from it.

not), the management of the case so far is more characteristic of a less experienced lawyer in the $150 per hour range. Nevertheless, given that the Court initially allowed the Firm to bill $200 per hour for Senior Counsel's time, the Court will now not reduce the rate for Senior Counsel below the $200 level.[18]

Finally, the Firm and other counsel, through the Giddens materials, argue that the collection rate in bankruptcy cases is so consistently low – 72% and 61% respectively for Puccini & Meagle, P.A. and Mr. Giddens -- that the Court should award higher rates of compensation so that collections are higher. Of course the Court as a former attorney recalls a number of

---

[18] Ordinarily upon the expiration of the deadline for objections and no objections having been filed, proposed counsel promptly submits a proposed order for employment setting out the rates of compensation. When that order (pursuant to the application) proposes an hourly rate in excess of $200, the Court will approve the order at $200 per hour without a further hearing, and provide that counsel may seek a specific hearing on the issue of a higher rate. See, e.g., In re Bennett, 283 B.R. at 312. And the Court usually also inserts a provision that if Counsel seeks a higher rate, the result could in fact be a rate lower than $200 per hour. See, e.g., In re Gilliland, no. 11-05-10492 SA, Order Authorizing Debtors to Employ Counsel (doc 17) and In re Silver Bird, LLC, no. 11-05-10618 SA, Order Authorizing Debtor to Employ Counsel (doc 30). Because the Application in this case was handled differently (counsel did not submit an employment order but instead requested a preliminary hearing followed by another preliminary hearing in turn followed by the entry of the employment order prepared by counsel), the Firm received no such "warning" in this particular case of the possibility of a lower hourly rate.

such instances of low or no collections (one of which is summarized in <u>In re Bennett</u>, 283 B.R. at 311-12) and thus sympathizes with counsels' position.  And indisputably a fact of life about representing the estate or a debtor in possession is that the rate sometimes turns out to be a "contingent hourly" rate; <u>i.e.</u>, payment on an hourly basis that may or may not get paid.

Nevertheless, there are problems with the collection-rate argument.  First, no data are presented that show that the collection rates outside of bankruptcy are any higher. Indeed, the Court assumes that relatively few attorneys collect 100% of their fees in every case or engagement, whether in or out of bankruptcy.  Second, no data was presented showing what the collection percentage was for counsel generally in bankruptcy cases, as opposed to for those two firms.  Third, the allegedly relatively low collection rates in bankruptcy may depend on a number of factors, including whether counsel overbilled in various cases and thus was not able to collect on fees because they were not allowed or because the bills were simply too high and the client refused to pay.  And finally, allowing higher rates of compensation may not per se increase the gross revenue received from any given case if there are simply not enough

resources to pay the higher fees.  In other words, it is this judge's observation that the primary reason attorneys and other professionals do not receive more compensation on the whole from bankruptcy practice is simply that a number of cases can't bear the fees that result from the professionals' efforts regardless of how useful the work is.

**Conclusion:**

For the foregoing reasons, the Firm's application to be paid more than $200 per hour for Senior Counsel's work is denied, although the rate of $200 is allowed.  The previous order approving the Application and allowing the employment (doc 38) is set aside.  Once the Firm has filed the requisite Rule 2014(a) statement and served it on the United States Trustee, and assuming it does so within five business days of the entry of this memorandum opinion and order, the Firm may submit an order, approved by the United States Trustee[19], employing it effective March 1, 2005, pursuant to footnote 15 above.  If the Rule 2014 statement is filed later than the five days, any employment will be effective retroactive to the date of the filing of the Rule 2014 statement.  The order to be submitted by counsel may incorporate the remainder of the

_____

[19] If the United States Trustee will not approve the Order, the Court will conduct a hearing on extremely short notice.

provisions of the first employment order such as monthly
interim payments (doc 38), but it must include the changes to
the attorney-client employment agreement as specified in this
Memorandum Opinion.  An order will enter.


Honorable James S. Starzynski
United States Bankruptcy Judge

I hereby certify that on April 1, 2005, a true and correct
copy of the foregoing was electronically transmitted, faxed,
delivered, or mailed to the listed counsel and/or parties.

Jennie D Behles
PO Box 7070
Albuquerque, NM 87194-7070

Alice Nystel Page
PO Box 608
Albuquerque, NM 87103-0608

Michael Newell
PO Box 1599
Lovington, NM 88260-1599

Rod M Schumacher
PO Box 700
Roswell, NM 88202-0700

Stephen Stuart Shanor
PO Box 700
Roswell, NM 88202-0700

Michael R Enright
280 Trumbull St
Hartford, CT 06103-3509

**APPENDIX 1.**

**Chapter 11 cases in the District of New Mexico, Jan. 1, 2002 through Mar. 30, 2005**

This table lists all cases filed under or converted to Chapter 11 in the District of New Mexico from January 1, 2002 through March 30, 2005. The "Rate" column is the rate approved, either in the Order itself, or by reference to the Motion to Employ Attorney. Approval of the Rate does not necessarily mean the Court will award that rate for all work done. Furthermore, in several cases no fee applications were ever filed and/or no fees were ever awarded.

| Case Number | | Case Title | Assets[1] | Liabs[1] | Status[2] | Attorney(s) | Rate[3] |
|---|---|---|---|---|---|---|---|
| 02-10035 | SS | Francisco Leon Rios | 1-10 | 1-10 | F | M. Chappell | 175 |
| 02-10188 | MA | Salvador R. Guzman and Patricia A. Guzman | 1-10 | NS | CV | B. Davis<br>C. Pierce<br>C. Tessman<br>M. Garcia<br>Associates | 225<br>175<br>150<br>125<br>125 |
| 02-10475 | MA | Independent Utility Company | 1-10 | .1-.5 | P | G. Velarde | 175 |
| 02-10476 | SA | Randy C. Lykins | .1-.5 | 1-10 | P | Pro Se | – |

[1] Assets and Liabilities are stated in millions. "NS" indicates no amount stated on petition.

[2] Case status: F – final decree entered, P – pending, not confirmed, C – confirmed, D – dismissed, CV – converted.

[3] Rate: * indicates no Order entered setting rates, ‡ indicates no motion to employ filed, ✕ indicates that employment was denied (and no other attorney entered appearance).

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-10592 | MA | Waltice Benjamin Ham III and Shari Linn Ham | .5-1 | 1-10 | F | B. Davis<br>C. Pierce<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>175<br>150<br>125<br>120 |
| 02-10667 | MA | Calmar, Inc. | .5-1 | 1-10 | F | R. Jacobvitz<br>D. Thuma<br>T. Walker | 190<br>170<br>170 |
| 02-10678 | MA | Hoffmantown Body Shop, Inc. | .1-.5 | .1-.5 | F | B. Gordon<br>S. Long<br>Associates | 180<br>180<br>165 |
| 02-10752 | SA | Moonlight Enterprises, LLC | NS | NS | D | G. Moore<br>A. Berkson | 175<br>90 |
| 02-10927 | SR | Burton S. Gammill | NS | 1-10 | CV | G. Moore<br>A. Berkson | 175<br>90 |
| 02-10970 | MA | Archies Lounge, Inc. | 0-.05 | .5-1 | CV | J. Rocha de Gandara<br>H. Payne | 125<br><br>125 |
| 02-11070 | SS | Price's Ilfield Hardware Co., Inc. | NS | NS | CV | L. Fields | 200 |
| 02-11481 | MA | Monarch Broadcast Services, Inc. | NS | .5-1 | P | W. Reardon | 150 |

Case 04-15755-s11 Doc 87 Filed 04/01/05 Entered 04/02/05 17:58:00 Page 29 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-11659 | MA | Hillary P. Paul and Mary B. Paul | .05-.1 | .1-.5 | CV | P. Becht | 175 |
| 02-11660 | SA | John T. Fox | .1-.5 | .5-1 | D | P. Becht | 175 |
| 02-11826 | SR | Smith Enterprises, Inc. | 0-.05 | 0-.05 | D | P. Montoya | * |
| 02-11831 | MA | Rural Housing, Inc. | 1-10 | 1-10 | D | D. Becker | 175 |
| 02-11881 | MA | General Waste Corporation | .05-.1 | .5-1 | CV | B. Gordon S. Long Associates | 180 180 165 |
| 02-11882 | MA | Bruce F. Glaspell | NS | 0-.05 | CV | B. Davis C. Pierce C. Tessman M. Garcia | 200 175 150 125 |
| 02-11883 | MA | Viviana E. Cloninger | NS | .1-.5 | CV | B. Davis C. Pierce C. Tessman M. Garcia | 200 175 150 125 |
| 02-11970 | SS | Oliver C De Baca | .5-1 | 1-10 | D | Pro se | - |

Case 04-15755-s11   Doc 87   Filed 04/01/05   Entered 04/02/05 17:58:00 Page 30 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-12182 | SA | Septien & Assoc., Inc. | 0-.05 | .1-.5 | D | S. Turpen | * |
| 02-12274 | SS | Carolyn Still Takhar | 1-10 | NS | C | G. Moore<br>A. Berkson | 175<br>90 |
| 02-12552 | SL | Rio Grande Mills, Inc. | 0-.05 | .5-1 | CV | D. Giddens<br>Associates | 200<br>110 |
| 02-12925 | SA | Loraca International, Inc. | 1-10 | 1-10 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>175<br>175<br>150<br>150<br>125 |
| 02-12926 | MA | Lexus Companies, Inc. | 0-.05 | 1-10 | D | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | ✕ |

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-12927 | SA | Calumet Securities Corp. | 0-.05 | 1-10 | D | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | ✕ |
| 02-12928 | MA | HomeLoan.com, Inc. | 0-.05 | 1-10 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | ✕ |
| 02-12968 | MA | PINS Stillwater, Inc. | .1-.5 | .1-.5 | CV | R. Jacobvitz<br>D. Thuma<br>T. Walker | 190<br>170<br>170 |
| 02-13758 | MA | PMR Construction Services, Inc. | 1-10 | 1-10 | CV | R. Jacobvitz<br>D. Thuma<br>T. Walker | 190<br>170<br>170 |
| 02-13809 | SA | Assist/Care New Mexico, Inc. | 0-.05 | .1-.5 | D | S. McIlwain | 175 |
| 02-14214 | MR | Dewey M. Runnels and Judy C. Runnels | .1-.5 | .05-.1 | P | S. Diamond | 200 |

Case 04-15755-s11   Doc 87   Filed 04/01/05   Entered 04/02/05 17:58:00 Page 32 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-14217 | MR | Runnels Broadcasting Systems, LLC | 0-.05 | .1-.5 | P | J. Behles | 200 |
| 02-14552 | SA | Filandro R Anaya and Odette Chavez-Anaya | 1-10 | .5-1 | P | D. Giddens Associates | 200 120 |
| 02-14553 | SL | Meteor Stores, Inc. | .1-.5 | .5-1 | D | L. Ramirez | * |
| 02-15145 | MS | Phase-1 Molecular Toxicology, Inc. | .1-.5 | .1-.5 | F | R. Jacobvitz D. Thuma T. Walker | 190 170 170 |
| 02-15335 | SR | Ali M. Ghaffari Sr. and Linda Ghaffari | 0-.05 | .1-.5 | D | D. Webb | 200 |
| 02-15336 | SR | Buena Vista Retirement Center, Inc. | 0-.05 | .05-.1 | D | M. Daniels | * |
| 02-15485 | SA | Tingley's Grill, LLC | 0-.05 | .1-.5 | D | Pro se | - |
| 02-15740 | MS | Thomas N. White Jr. | 1-10 | 1-10 | D | Pro se | - |
| 02-16342 | MR | MDP, Inc. | .1-.5 | .1-.5 | D | D. Giddens | 200 |

Appendix 1.                    Page -6-

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-16431 | MA | Advantage Printing Specialists Corp. | .1-.5 | .1-.5 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>175<br>175<br>150<br>125<br>125 |
| 02-16432 | SA | TEWA Techonology Corporation | 0-.05 | .1-.5 | D | G. Velarde | 175 |
| 02-16567 | SL | Rodney S. Pino and Janet L. Pino | .1-.5 | .1-.5 | CV | R. Holmes | 145 |
| 02-16868 | ML | Adventure Aviation, Inc. | .1-.5 | 1-10 | D | S. Mazer | 175 |
| 02-17007 | MA | Equity Holding Corporation | 1-10 | 1-10 | D | E. Kanter | * |
| 02-17127 | SA | Central Park Limited | NS | NS | D | D. Behles | 175 |
| 02-17828 | SA | Brisket House, Inc. | 0-.05 | 0-.05 | C | S. McIlwain | 175 |
| 02-17878 | SA | Investment Company of the Southwest, Inc | 1-10 | 1-10 | C | D. Behles | 195 |

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 02-17903 | MR | Hemmingsway Hotel, LLC | 1-10 | 1-10 | D | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 225<br>175<br>175<br>150<br>125<br>125 |
| 02-17934 | SS | David Weckerly, Inc., a New Mexico Corp. | NS | 1-10 | D | G. Moore | * |
| 02-18034 | MA | Rudolfo Joseph Sandoval and Eufelia Sandoval | NS | NS | D | G. Moore<br>A. Berkson | 175<br>90 |
| 02-18752 | MA | R.B. French Fire & Sound, Inc. | .5-1 | 1-10 | C | W. Reardon | 175 |
| 02-18779 | SA | Virginia S. Silva and Bradford H. Zeikus | NS | .1-.5 | F | D. Behles | 195 |
| 03-10082 | SL | Tomlin Farms, L.L.C. | 1-10 | 10-50 | C | R. Jacobvitz<br>D. Thuma<br>T. Walker | 190<br>170<br>170 |
| 03-10083 | ML | Seven L Bar, L.L.C. | 1-10 | 1-10 | C | B. Given | 205 |
| 03-10524 | SR | High Energy Access Tools, Inc. | NS | NS | P | G. Moore<br>A. Berkson | 195<br>110 |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 35 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 03-11161 | MA | Colony Information Technology Corp. | 1-10 | 1-10 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>175<br>175<br>150<br>125<br>125 |
| 03-11238 | ML | Star Concrete, Inc. | NS | .1-.5 | D | J. Bartholomew | * |
| 03-11510 | SA | R.G. Cantina Ltd. Co. | .1-.5 | .5-1 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>175<br>175<br>150<br>150<br>125 |
| 03-11697 | SA | Allied Discount Corporation | .1-.5 | .1-.5 | P | G. Moore<br>A. Berkson | 195<br>110 |
| 03-11772 | MR | Jack Leroy Muse | 1-10 | 1-10 | D | L. Bloom | 190 |
| 03-11787 | SF | NewCo Aggregate Company, L.L.C. | 0-.05 | .5-1 | CV | M. Daniels | 150 |
| 03-11984 | SS | D IV Designs, Inc. | NS | NS | P | G. Moore | * |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 36 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 03-12228 | SA | Superior Pest Control, Inc. | 0-.05 | 1-10 | P | G. Velarde | 175 |
| 03-12274 | SA | Smith-Everett Homes, Inc. | 1-10 | 1-10 | CV | D. Behles | 195 |
| 03-12715 | ML | Reginald Nease | 1-10 | .1-.5 | F | D. Giddens Associates | 200 150 |
| 03-12960 | MR | The Melodie Corporation | .5-1 | 1-10 | P | R. Jacobvitz D. Thuma T. Walker | 195 175 175 |
| 03-12990 | MA | Pavement Maintenance Co. Inc. | .1-.5 | .1-.5 | CV | A. Chisholm | ‡ |
| 03-13879 | SA | Felix Gomez | .1-.5 | 1-10 | CV | R. Holmes | 145 |
| 03-13944 | MA | Colony Information Services Corp. | .1-.5 | 1-10 | CV | R. Lowe | * |
| 03-14485 | SA | B & B Management, Inc. | .05-.1 | .5-1 | C | G. Velarde | 175 |
| 03-14646 | ML | James Alford | 1-10 | .1-.5 | P | W. Reardon | 175 |
| 03-14717 | SA | DB Kelly De Vargas, Inc. | NS | NS | D | G. Moore A. Berkson | 195 119 |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 37 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 03-14871 | SA | Donna M. Smith and Bruce R. Smith | .5-1 | 1-10 | P | G. Velarde | 175 |
| 03-15163 | SA | Tito's Tavern, Inc. | .1-.5 | .1-.5 | D | R. Lowe | * |
| 03-15314 | SL | Sun Products, Inc. | NS | NS | F | D. Behles | 195 |
| 03-15868 | MR | AST West, Inc. | .5-1 | .5-1 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>200<br>175<br>150<br>150<br>125 |
| 03-15930 | MS | Fine Fare and Fowl, Inc. | .05-.1 | .1-.5 | D | B. Gordon<br>S. Long<br>A. Yarrington | 175<br>190<br>165 |
| 03-16263 | SA | Tao Te, Inc. | .1-.5 | .1-.5 | D | R. Lowe | * |
| 03-16402 | MA | Dale S. Stull and Charlotte F. Stull | .5-1 | 1-10 | C | B. Gordon<br>S. Long<br>A. Yarrington | 175<br>190<br>165 |

Case 04-15755-s11   Doc 87   Filed 04/01/05   Entered 04/02/05 17:58:00 Page 38 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 03-16462 | SS | The Inn, LLC. | 1-10 | 1-10 | C | J. Thomason | 150 |
| 03-18437 | MA | CAD Drafting & Design, LLC | .1-.5 | .1-.5 | P | L. Puccini<br>S. Meagle | 250<br>140 |
| 03-18462 | SA | Brock B. Parker | .1-.5 | .05-.1 | C | E. Thunberg | 125 |
| 03-18842 | MA | Pioneer Mobile Homes Service, LLC | 0-.05 | .05-.1 | D | S. Mazer | 180 |
| 03-19023 | MS | Juan Ramon Gonzales and Rosemary Gonzales | .5-1 | .1-.5 | D | G. Ottinger | 175 |
| 03-19457 | MA | Gregory M. Dotson and Mary J. Dotson | 1-10 | 1-10 | CV | B. Davis<br>C. Pierce<br>A. Goodman<br>C. Tessman<br>M. Garcia<br>Associates | 200<br>200<br>175<br>150<br>150<br>125 |
| 04-10050 | SS | Russell Wolfe and Vivian B. Wolfe | .1-.5 | .1-.5 | P | D. Becker | 175 |
| 04-10100 | MA | Donnie R. Owens | 1-10 | 1-10 | P | R. Jacobvitz<br>D. Thuma<br>T. Walker | 190<br>170<br>170 |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 39 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-10194 | MA | Djahangir Davoudzadeh | .1-.5 | .5-1 | D | S. Mazer | * |
| 04-10341 | MA | Rocky Mountain Brewing Co., Ltd. | NS | NS | P | D. Behles | 195 |
| 04-10461 | SR | William C. Davis and Sandra M. Davis | 1-10 | 1-10 | P | R. Jacobvitz<br>D. Thuma<br>T. Walker<br>S. Schaeffer | 190<br>170<br>170<br>110 |
| 04-10711 | SA | Uniflex Southwest, LLC | 1-10 | 10-50 | D | R. Jacobvitz<br>D. Thuma<br>T. Walker<br>S. Schaeffer | 195<br>175<br>175<br>110 |
| 04-11048 | SS | John Henry Rippe | 0-.05 | 0-.05 | D | L. King | * |
| 04-11150 | SR | Thomas Ace Appling and Mary Helen Appling | .5-1 | 1-10 | P | B. Gordon<br>S. Long | 175<br>190 |
| 04-11226 | MA | Gaim-Ko, Inc. | 10-50 | 1-10 | P | G. Moore<br>A. Berkson | 200<br>125 |
| 04-11243 | MA | Ray A. Gallegos and Charlotte Gallegos | .1-.5 | .1-.5 | P | D. Giddens Associates | 225<br>120 |

Appendix 1.                     Page  -13-

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-11283 | MA | Edward B. Madrid | .05-.1 | .1-.5 | P | G. Velarde | 185 |
| 04-11495 | MS | Thomas Neil Perez Sr. and Sandra Laurie Perez | .5-1 | 1-10 | C | B. Davis<br>C. Pierce<br>A. Goodman<br>P. Barber<br>C. Tessman<br>M. Garcia | 200<br>200<br>175<br>175<br>150<br>150 |
| 04-11562 | MA | Recognition Plus Corp. | 0-.05 | .1-.5 | P | G. Ottinger | 175 |
| 04-11649 | SA | Chemmet Laboratory and Refinery Corp. | 0-.05 | 0-.05 | CV | S. Mazer | 180 |
| 04-11971 | MA | Beta Corporation International, Inc. | .1-.5 | 1-10 | P | B. Davis<br>C. Pierce<br>A. Goodman<br>P. Barber<br>C. Tessman<br>M. Garcia | 225<br>200<br>175<br>175<br>150<br>150 |
| 04-12155 | SA | Albuquerque Chemical Company, Inc. | 1-10 | 1-10 | CV | W. Reardon | 175 |
| 04-12175 | MA | Equus Albuquerque Airport LLC | 0-.05 | 0-.05 | D | J. Behles<br>L. Higgins | ?<br>150 |

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-12390 | SR | Lorenzo A. Ramirez and Ramona G. Ramirez | 0-.05 | 0-.05 | P | T. Arvizu | 140 |
| 04-13152 | SA | System One Satellite, Inc. | 0-.05 | .1-.5 | D | S. Mazer | 180 |
| 04-13371 | SL | Star Concrete Inc. | .05-.1 | .1-.5 | P | J. Bartholomew | * |
| 04-13378 | SL | Joel T. Danley | .1-.5 | 1-10 | P | R. Lowe | 200 |
| 04-13379 | ML | J.D. Materials, Inc. | 1-10 | 1-10 | D | R. Lowe | * |
| 04-13983 | SA | Mach 2 Machining & Manufacturing Inc. | 0-.05 | 1-10 | P | D. Giddens Associates | 225 150 |
| 04-13998 | MR | Buena Vista Retirement Center | .1-.5 | .5-1 | P | S. Mazer | 180 |
| 04-14417 | MA | Gary George Spatta and Linda Kathaleen Spatta | 1-10 | 1-10 | P | G. Moore A. Berkson | 200 125 |
| 04-15468 | SA | Old Abe Company | 0-.05 | 0-.05 | P | M. Daniels | * |
| 04-15469 | SA | Lincoln Gold & Tungsten, Inc. | .5-1 | .1-.5 | P | M. Daniels | * |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 42 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-15755 | SR | Union Home and Industrial, Inc. | 0-.05 | .1-.5 | P | J. Behles<br>H. Meade | ___<br>125 |
| 04-15914 | ML | The Flashing Company, Inc. | 0-.05 | .1-.5 | P | T. Arvizu | * |
| 04-15974 | MA | New Mexico Golf Academy, LLC | 0-.05 | 1-10 | P | D. Giddens<br>Associates | 225<br>150 |
| 04-15995 | MS | Texas Reds, Inc. | .5-1 | .5-1 | P | D. Becker | 175 |
| 04-16394 | MA | Academy Printers, Inc. | 1-10 | 1-10 | P | R. Lowe | * |
| 04-16431 | MA | Murell Hogan and June E. Hogan | .1-.5 | .1-.5 | P | G. Moore<br>A. Berkson | 200<br>125 |
| 04-16866 | SF | Double P Investments, Inc. | .1-.5 | .1-.5 | P | S. Long | 200 |
| 04-16879 | SL | Alco Fabricators, Inc. | 0-.05 | .5-1 | P | T. Arvizu | * |
| 04-17080 | SA | Kenneco Custom Roofing, Inc. | .5-1 | .5-1 | P | J. Bartholomew | 150 |

Case 04-15755-s11    Doc 87    Filed 04/01/05    Entered 04/02/05 17:58:00 Page 43 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-17376 | SA | Escala, LLC | NS | NS | P | R. Jacobvitz<br>D. Thuma<br>T. Walker | 195<br>195<br>195 |
| 04-17520 | MA | Gary Edward Martinez and Mary Jo Martinez | .1-.5 | .1-.5 | P | G. Moore<br>A. Berkson | 200<br>125 |
| 04-17555 | SA | Robert F. Belfon and Teresa I. Belfon | 0-.05 | .05-.1 | P | D. Webb | 200 |
| 04-17704 | SA | Daniel William Cook and Yolanda T. Cook | 1-10 | 1-10 | P | Pro se | - |
| 04-17848 | SA | Sutro-Sandia Corporation | 0-.05 | .05-.1 | P | T. Rice | * |
| 04-17960 | MS | Hendrickson Consulting, Inc. | .05-.1 | .1-.5 | P | A. Schimmel | * |
| 04-18146 | ML | Zia Shadows, LLC, a New Mexico Limited | 1-10 | 1-10 | P | S. Mazer | 180 |
| 04-18302 | ML | David Holguin and Maria Holguin | .05-.1 | 1-10 | P | D. Giddens Associates | 225<br>120 |
| 04-18786 | SA | Iniquities LLC | .1-.5 | .1-.5 | P | J. Bartholomew | 150 |

Case 04-15755-s11   Doc 87   Filed 04/01/05   Entered 04/02/05 17:58:00 Page 44 of 46

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 04-19427 | SL | Villages At Ranchers Club, Inc. | 1-10 | .1-.5 | P | T. Arvizu | * |
| 05-10034 | MS | Guadalupe Station, LLC | .1-.5 | .1-.5 | P | B. Davis<br>C. Pierce<br>A. Goodman<br>M. Garcia<br>Associates | 200<br>175<br>175<br>150<br>125 |
| 05-10262 | SS | Lobo Land, LLC | 1-10 | 1-10 | P | G. Moore<br>A. Berkson | * |
| 05-10321 | MS | Brenda C. Price | 1-10 | 1-10 | P | M. Chappel | * |
| 05-10323 | MA | James Coplan Williams III and Sandra Gail Williams | .5-1 | .5-1 | P | D. Becker | 175 |
| 05-10492 | SA | Alvie D. Gilliland and Sharon Ann Gilliland | .1-.5 | .1-.5 | P | G. Moore<br>A. Berkson<br>B. Gandarilla | 200<br>145<br>145 |
| 05-10618 | SA | Silver Bird, LLC | NS | NS | P | G. Moore<br>A. Berkson<br>B. Gandarilla | 200<br>145<br>145 |

Appendix 1.                    Page -18-

| Case Number | | Case Title | Assets | Liabs | Status | Attorney | Rate |
|---|---|---|---|---|---|---|---|
| 05-10678 | SA | Scott G. Smith | .1-.5 | .1-.5 | P | G. Moore<br>A. Berkson | * |
| 05-10788 | ML | TNM Services Company, LLC | 1-10 | 1-10 | P | L. Puccinni<br>S. Meagle | 250<br>175 |
| 05-10903 | MA | The Zoo Animal Hospital, Inc. | .05-.1 | .1-.5 | P | D. Webb | 200 |
| 05-11126 | MA | ABC Cake, Inc. | .1-.5 | .1-.5 | P | L. Puccinni<br>S. Meagle | * |
| 05-11248 | MS | George Espinosa and Mary Espinosa | 1-10 | .5-1 | P | G. Moore<br>A. Berkson<br>B. Gandarilla | * |
| 05-11276 | MA | Ronald W. Ziemann | .5-1 | .5-1 | P | L. Puccinni<br>S. Meagle | * |
| 05-11304 | MA | Fox | .1-.5 | .5-1 | P | P. Becht | ‡ |
| 05-11876 | SF | San Juan River Tank, Inc. | .1-.5 | .1-.5 | P | B. Davis<br>C. Pierce<br>A. Goodman<br>Associates | * |

Case 04-15755-s11   Doc 87   Filed 04/01/05   Entered 04/02/05 17:58:00 Page 46 of 46