# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of  06/10/06    . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:**     Union Home and Industrial, Inc.

**Case Number:**     04-15755

| Document Information |
|:---:|

| | |
|---|---|
| **Description:** | Memorandum Opinion and Order Denying re: [98-1] Request for Disqualification of Bankruptcy Judge by Union Home and Industrial, Inc. . |
| Received on: | 2006-02-09 10:28:30.000 |
| **Date Filed:** | 2006-02-09 00:00:00.000 |
| **Date Entered On Docket:** | 2006-02-09 00:00:00.000 |

| Filer Information |
|:---:|

**Submitted By:**     James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date.  To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
UNION HOME AND INDUSTRIAL,
     Debtor.                                    NO. 11-04-15755 SR

**MEMORANDUM OPINION AND ORDER DENYING REQUEST FOR DISQUALIFICATION
OF BANKRUPTCY JUDGE IN PROCEEDING OR PROCEEDINGS**

     The Debtor in Possession ("Debtor") has filed a Request for
Disqualification of Bankruptcy Judge in Proceeding or Proceedings
("Disqualification Request") (doc 98). The Disqualification
Request will be denied.

**Procedural Background**

     The Debtor filed its voluntary chapter 11 petition on August
9, 2004 (doc 1). A day later Debtor filed its Motion to Employ
Counsel ("Motion to Employ") seeking approval of its hiring of
the Behles Law Firm, P.C. ("Firm", whose principal is Jennie
Deden Behles – "Senior Counsel") (doc 5), accompanied by the Rule
2016 disclosure of compensation (doc 4). No rule 2014 affidavit
was filed at that time, although paragraph 3 of the Motion to
Employ (which was signed by Senior Counsel for the Firm) recited
as follows:

> 3. To the best of the attorneys [sic] knowledge,
> attorneys have no conflict with the Debtor, their [sic]
> creditors, the United States Trustee, or any party in
> interest herein that would disqualify attorneys from
> this representation pursuant to 11 U.S.C. § 327;...

     The United States Trustee ("UST") filed a limited objection
to the Motion to Employ (doc 17), stating that hourly fees in
excess of $200 per hour were the exception rather than the rule

for bankruptcy cases in the District of New Mexico, and that the Debtor's request to pay the Firm $250 per hour for Ms. Behles' services should require a showing concerning among other things Ms. Behles' expertise and the difficulty of the case. The limited objection also noted that the Court had just previously required another counsel in another case to provide a "market survey" to justify an hourly rate of $225 per hour.[1] The Court entered an interim order approving the employment of the Firm and a billing rate of $200 per hour for Senior Counsel and taking under advisement the request for $250 per hour. Doc 38. The order approving the employment contained the Court's standard provision requiring the Firm to make a separate showing of its entitlement to an hourly rate of more than $200 per hour. <u>See, e.g.</u>, <u>In re Mach 2</u> (doc 57), <u>In re R.G. Cantina, Ltd.</u>, No. 11-03-11510 (doc 21), and <u>In re Gilliland</u>, No. 11-05-10492 SA (doc 17); <u>see also</u> the Court's written materials for the New Mexico State Bar Bankruptcy Law Section's Year in Review continuing legal

---

[1] That case was <u>In re Mach 2 Machining and Manufacturing, Inc.</u>, No. 11-04-13983 SA. Counsel in that case sought an hourly rate of $225 per hour and submitted affidavits from various counsel in support of the request. (Those affidavits were treated as evidence in this case with the consent of Senior Counsel.) The Court entered an order in <u>Mach 2</u> permitting primary counsel in that case to charge $225 per hour. Doc 98. That was the only case in which that attorney has billed at that rate; in subsequent cases the attorney has billed at the rate of $200 per hour. <u>E.g.</u>, Stipulated Order Approving Debtor's Motion to Employ Attorneys, <u>In re New Mexico Motor Speedway, Inc.</u>, No. 11-05-14845 SA (doc 46).

education ("CLE") program on March 4, 2005 at paragraph 1(b).[2]
On April 1, 2005 the Court entered an order and supporting
memorandum opinion setting aside the employment order and denying
the request for the $250 rate, and detailing the reasons
therefor.  Docs 85 and 87 respectively.[3]  The Court "unemployed"
the Firm as the attorney for the Debtor because of the Firm's
failure to file a Rule 2014 statement, and the Court limited
Senior Counsel's rate to $200 per hour based on the evidence,
including data concerning market rates and Senior Counsel's
performance in this and other cases.

In the meantime (as detailed in the memorandum opinion, doc
87) the Debtor sought three extensions of exclusivity.  The Court
ultimately denied those requests because the Debtor initially
failed to file a certification of service of the first motion to
extend exclusivity and later failed to file the third request for
extension of exclusivity timely.[4]  The Debtor also struggled to

---

[2] "And my practice has also been by and large to approve a
rate of up to $200/hour, with the proviso in the order that if
the attorney wants a higher rate, the attorney can request a
specific hearing on that issue to present evidence and legal (or
other) argument for the increased rate."  A copy of the written
CLE materials, available as "Year in Review 2004" on the Court's
public web page, is attached to this memorandum opinion for ease
of reference.

[3] Although Senior Counsel promptly filed the Rule 2014
affidavit (doc 88), the Firm has yet to submit an order
(re)employing the Firm.

[4] In fact, the Firm had filed the motion for the third
(continued...)

Case 04-15755-s11   Doc 243   Filed 02/09/06   Entered 02/09/06 12:20:00 Page 4 of 49

obtain the employment of the accountant because of a failure to properly disclose financial transactions or arrangements with the Debtor.[5]

Shortly after the attorney "de-employment" order (doc 85) was issued, the Debtor filed its Motion for New Trial (Reconsideration of) April 1, 2005 Order and Memorandum to the Honorable James S. Starzynski on the Motion to Employ Counsel, the Behles Law Firm, P.C. (Doc 97) ("Attorney Reconsideration Motion"), for reconsideration of the order denying employment of the accountant (doc 95), and a motion to set aside the order denying the motions for the second and third extensions of exclusivity (doc 96). On the same date Debtor filed the Disqualification Request (doc 98). Because the Disqualification Request incorporates the issues raised by the various motions for reconsideration (doc 98 at 2-3, 5), the Court has delayed ruling

---

[4](...continued)
extension one day late. Memorandum Opinion and Order Denying as Moot Motion for Reconsideration of Order Denying Extension of Exclusivity, at 2 note 1. Doc 239. The issue was mooted by the fact that the Debtor filed and confirmed its plan without any other party having filed a competing plan. Docs 134 and 239.

[5] The details are set out in the order denying the employment. Doc 84. The order also explained how the problem could easily be solved and invited the Debtor to submit an additional affidavit from the accountant and an order employing the accountant. Debtor instead filed a motion to reconsider the order not employing the accountant (doc 95), then filed a second affidavit from the accountant (doc 105), but has not submitted an order to employ the accountant as permitted by the order. Submitting the order allowing the employment of the accountant will moot the motion for reconsideration.

Page 4 of 32

on those various motions until it rules on the Disqualification Request.  While there is probably no statute or rule that prevents a judge from ruling on matters pending a decision on a disqualification motion, _see_ _In re Spirtos_, 298 B.R. 425, 433 (Bankr. C.D. Cal. 2003), it is probably prudent to do so, _see Allen-Myland, Inc. v. Int'l Business Machines Corp._, 714 F.Supp. 707, 708-09 (S.D. N.Y. 1989).  This would especially be the case if the Court were to disqualify itself.  _Cf. Liljeberg v. Health Services Acquisition Corp._, 486 U.S. 847, 866 (1988) (had trial court judge discovered that he was disqualified under § 455 before he issued the judgment, he would have been required to recuse before issuing the judgment; instead, having (constructively) discovered the ground of disqualification afterward, he was required to disclose and recuse immediately so that the parties could file a motion for a new trial instead of having to file a Rule 60(b) motion considerably later).

Debtor supported the Disqualification Request with seven affidavits of attorneys and others (docs 112-117 and 119) and with a brief (doc 122).  The Office of the United States Trustee took no position on the Disqualification Request (doc 108), nor did any other creditor or party in interest.  The Court conducted two preliminary hearings on the Disqualification Request (minutes – docs 106 and 121) and entered the Pre-Trial Scheduling Order in Regard to Recusal (doc 109).  Decretal paragraph 8 of that

scheduling order provided that "[t]he parties have agreed and the
Court has approved the submission of this matter by affidavits,
as well as judicial notice of matters of record without further
oral presentation of evidence."

**Analysis**

A preliminary issue that needs to be addressed is that the
Disqualification Request sought removal of the Court for only
part of the proceedings – those having to do with the
reconsideration motions. Doc 98 at 1, 3, 5; see also Debtor's
Brief in Regard to Limited Disqualification (doc 122). Citing
Rule 5004(a) and (b), Senior Counsel made clear that the Debtor
did not want the Court to recuse itself from continuing with the
confirmation process or the rest of the case. The primary
creditor Daryl Gough concurred in that position. Pretrial
Scheduling Order in Regard to Recusal, at "decretal" paragraph 3.
Doc 109.

The Court agrees that the language and advisory committee
comment of Rule 5004 appear to permit the Court to continue to
preside over the remaining part of the case. Rule 5004(a)
provides in part that "[a] bankruptcy judge shall be ...
disqualified from presiding over the proceeding or contested
matter in which the disqualifying circumstances arises [sic] or,
if appropriate, shall be disqualified from presiding over the
case." The Advisory Committee Notes explain in part that

> [i]n a case under the Code it is possible that the
> disqualifying circumstance will be isolated to an
> adversary proceeding or contested matter.  The rule
> makes it clear that when the disqualifying circumstance
> is limited in that way the judge need only disqualify
> himself from presiding over that adversary proceeding
> or contested matter.

See generally In re Norton, 119 B.R. 332, 338-40 (Bankr. N.D. Ga. 1990)(discussing differences between civil cases and bankruptcy cases in the context of § 455), but compare id. at 340 ("There can be little disagreement that a disqualifying circumstance relating to debtor's counsel would require a judge to recuse himself from the entire case, as debtor's counsel's role is substantial and ongoing throughout the course of the bankruptcy case and [she] is likely to be involved in virtually all contested matters and adversary proceedings.").  Thus, pending the decision on the Disqualification Request, the Court entered orders approving the Debtor's disclosure statement (docs 110 and 111), conducted a confirmation hearing (minutes doc 129), and entered the confirmation order on August 8, 2005 (doc 134).  And the Debtor has filed objections to numerous claims which the Court will rule upon.  Docs 135-180; 193-237.

The Debtor sought disqualification of the Court primarily on the grounds of § 455(a)[6] and Rule 5004(a).  The Debtor stated

---

[6] § 455. Disqualification of justice, judge, or magistrate judge.
(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his

(continued...)

that it was not trying to prove that the Court was in fact biased against Senior Counsel, but rather that a reasonable person looking at the facts would conclude that the Court was biased against Senior Counsel.  Doc 122 at 2-3.  The Debtor also cited Rule 5004(a) and (b) as the basis for disqualification, although subsection (a) would seem to be the applicable portion of the rule.[7]

---

[6](...continued)
impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) Is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) Is acting as a lawyer in the proceeding;
(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

[7] Rule 5004.  Disqualification.

(continued...)

Before discussing each of the specific grounds alleged by the Debtor as a basis for recusal, the Court will briefly review the law on disqualification of a judge.

Title 28 U.S.C. § 455(a)[8] provides:

Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Under this statute, a judge has a continuing duty to recuse before, during, or, in some circumstances, after a proceeding if the judge concludes that sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality. United States v. Cooley, 1 F.3d 985, 992 (10th Cir. 1993). The judge's actual state of mind or lack of

_____

[7](...continued)
(a) Disqualification of Judge.
A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case.
(b) Disqualification of judge from allowing compensation.
A bankruptcy judge shall be disqualified from allowing compensation to a person who is a relative of the bankruptcy judge or with whom the judge is so connected as to render it improper for the judge to authorize such compensation.
    The Firm argues that Rule 5004(b) is "implicated" in this matter. Doc 98 at 3. Unless the Firm is arguing that the Court has such a bias against Senior Counsel that she should be considered to be "a person ... with whom the judge is so connected as to render it improper for the judge to authorize such compensation" (similar to a relative), this subsection of the rule is inapplicable. The issue of bias is sufficiently addressed in subsection (a).

    [8] 28 U.S.C. § 144, a similar statute, does not apply to bankruptcy judges. See Williams v. Southwestern Gold, Inc. (In re Williams), 99 B.R. 70, 71 n.1 (Bankr. D. N.M. 1989).

Page 9 of  32

partiality is not the issue in subsection (a) of the statute.

Id. at 993.  The test in the Tenth Circuit is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  Id. (citing United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992)).

> [T]he hypothetical reasonable observer is not the judge himself or a judicial colleague but a person outside the judicial system.  Judges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would.  On the other hand, a reasonable outside observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased.  There is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than "trivial."

United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998), cert. denied, 526 U.S. 1137 (1999)(citing In re Mason, 916 F.2d 384, 386 (7th Cir. 1990)).

> The standard is purely objective.  The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.  In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question.

Cooley, 1 F.3d at 993. (Emphasis in original.)  Section 455(a) must not be construed to require recusal on the "merest unsubstantiated suggestion" of bias or prejudice.  Id.  "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their

choice." Id. Finally, there is as much of an obligation for a judge not to recuse when there is no ground to do so as there is for the judge to do so when there are grounds. Id. at 994; Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir. 2002).

Section 455(a) is silent as to procedures that the Court should follow. "A reading of case law shows that Motions for Disqualification are typically decided on the documents submitted to the court." Lieb v. Tillman (In re Lieb), 112 B.R. 830, 836 (Bankr. W.D. Tex. 1990). Factual allegations in the pleadings do not have to be taken as true. Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987)(per curiam). "Nor is the judge limited to those facts presented by the challenging party." Id.

The Disqualification Request alleges several factual bases for the disqualification. Summarized, they appear to be (a) the orders setting aside the counsel employment order, not employing the accountant and not extending exclusivity were wrongly decided because the Court took into account various irrelevant and inaccurate matters (doc 98 at 2-3), (b) the Court assembled and cited evidence on its own (doc 98 at 3), (c) the Court entered orders without providing the Debtor the opportunity for a hearing before entering such orders (doc 98 at 3-4 and at 4; see also doc 122, at 11-12, asserting that the Court made its decision on evidence which the Debtor was given no opportunity to challenge),

(d) the Court's alleged use against the Firm of the decisions that it has rendered in this case (doc 98 at 4), and (e) the Court's allegedly having decided the compensation issue, or at least having discussed it, before issuing the decision (doc 98 at 4-5). The Court will address the allegations in the order listed.

The orders setting aside the counsel employment order, not employing the accountant and not extending exclusivity were in fact entered in part in reliance on facts other than as presented or argued by Senior Counsel. For example, the order which set aside the Firm's employment (doc 85) was based on the Court's examination of the docket in this case, thereby discovering that the Firm had failed to file its Rule 2014 statement. Similarly, when the Court was faced with contradictory filings by the accountant and the Debtor that suggested a clear conflict of interest forbidden by § 327(a), the Court had no choice but to raise the issue and get it resolved if it was going to allow the employment. Doc 84. That inquiry necessarily involved an examination of information in the file. And finally, when the Court discovered that the ACE docket did not reflect that the creditor body was notified of the first motion to extend exclusivity, the Court was obliged to deal with that by refusing the extensions of exclusivity until at least it was clear that

the Firm had provided the requisite notice.[9]  Doc 58.  The
details of those decisions are set out in the orders themselves,
so the Court will not elaborate further on those issues except to
comment that this Court's actions, even in the absence of an
objection or request from a party, in reading the pleadings
carefully, examining the docket and requiring the Firm and the
Debtor to abide by the Code and the rules ought not to be
construed as a basis for disqualification.

Senior Counsel also objected to the Court's partial reliance
on "various incorrect or irrelevant prior cases, none of which
bear on or prove counsel's ability or hourly rate...."[10]

---

[9] To be clear, the Firm had provided the requisite notice
for the first request, but had erroneously filed a document other
than the certificate of service.  Thus, when the Court examined
the ACE docket, it appeared that the Firm had failed to provide
sufficient notice of the first request for an extension.  The
Firm does not dispute these facts.

[10] That part of the decision cites five cases in which
Senior Counsel or one of her firms represented a debtor or
debtors at one time or another and reads as follows:
" Miller v. United States Trustee, 288 B.R. 879 (10th Cir. BAP
2003) (in Chapter 12 case, affirming hourly rate of no more than
$200 and affirming award for fees for total number of hours spent
confirming the plan); In re Bennett, 283 B.R. 308 (10th Cir. BAP
2002) (setting out the drawn out conduct of the chapter 12 case
and denying the petition for mandamus seeking to disqualify the
judge on the grounds, among others, of permitting no more than a
$200 hourly rate and of raising sua sponte Debtors' failure to
file chapter 12 plan or obtain an extension of time to do so
timely); Behles-Giddens, P.A. v. Raft (In re K.D. Company, Inc.),
254 B.R. 480 (10th Cir. BAP 2000) (affirming requirement that
Behles-Giddens, P.A. disgorge approximately $40,000); In re Love,
163 B.R. 164 (Bankr. D. Montana 1993) (second DIP attorney fee
application for $71,000 in fees and $20,000 in costs denied in
(continued...)

Disqualification Request at 3.  As the Court set out in its memorandum opinion at 19-23 (doc 87), a decision on what rate to compensate an attorney is one that requires examination of a number of factors.  Performance in previous cases, as reflected in published decisions, is one legitimate basis for judging an attorney's professional judgment and skill.

There were several components of the evidence concerning rates being charged by various attorneys.  One of them was the affidavits submitted by the attorney in the <u>Mach 2</u> case, which the Court and the Firm agreed should be used in this case.  Memorandum opinion at 3 n. 4 (doc 87); <u>see</u> the hearing exhibit list (doc 90).

And the Court cited the cases which Senior Counsel had not brought to the attention of the Court.  Since these cases are all matters of record – each of them a published case – F. R. Evid. 201 permitted the Court to take judicial notice of them.  It did take a short Westlaw search to assemble them, but that minor effort to provide a better record for making the compensation decision does not in the Court's opinion qualify as bias against Senior Counsel.

---

[10](...continued)
full for lack of full disclosure in Rule 2014 statement, actual charge for services exceeded estimate and services benefitted DIP personally rather than estate); and <u>In re Ewing</u>, 167 B.R. 233 (Bankr. D. N.M. 1994) (chapter 7 case in which Senior Counsel represented the debtor; fees of $40,000 sought and $6,500 awarded)."  Doc 87 at 5-6.

A substantial part of the Debtor's complaint is that the Court took judicial notice of portions of its own files. The process of taking judicial notice is governed by F.R. Evid. 201 and provides a method of gathering of evidence, whether supplied by the parties or noticed by the Court on its own.[11] Rule 201 also requires that the Firm be allowed to be heard on the propriety of that notice being taken. The Debtor is correct in asserting that it was entitled to address the accuracy of those facts and whether the Court should have taken the judicial notice to begin with. The Court is granting Debtor that opportunity in connection with the motion for reconsideration of the attorney employment order.

The cases cited by the Firm for the proposition that the Court may not in effect collect evidence on its own, so to speak,

---

[11] The relevant portions of Article II – Judicial Notice – are as follows:
Rule 201.  Judicial Notice of Adjudicative Facts
...
(b) Kinds of facts.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trail court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
(c) When discretionary.  A court may take judicial notice, whether requested or not.
...
(e) Opportunity to be heard.  A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.  In the absence of prior notification, the request may be made after judicial notice has been taken.
(f) Time of taking notice.  Judicial notice may be taken at any stage of the proceeding....

Page 15 of  32

are inapposite.  Doc 122, at 4-6.  Three of the cases cited by the Debtor arose from circumstances in which the court in question, through a law clerk, effectively took evidence "outside the record", <u>Price Brothers Co. v. Philadelphia Gear Corp.</u>, 629 F.2d 444 (6th Cir. 1980), which could not be examined because no record was kept or notice given.  <u>Standard Alliance Industries, Inc. v. Black Clawson Co.</u>, 587 F.2d 813, 828-29 (6th Cir. 1978), <u>cert. denied</u> 441 U.S. 923 (1979).  The bizarreness of the facts of those various cases is partly what makes them so inapplicable to the case at hand.  <u>E.g.</u>, <u>Kennedy v. Great Atlantic & Pacific Tea Co.</u>, 551 F.2d 593 (5th Cir. 1977) (judge allowed his law clerk to testify to what the law clerk observed at the scene of the accident, although the judge cautioned the jury not to attribute any special significance to the law clerk's testimony).  Nor did this Court retain evidence that was not admitted as part of the record, or have any ex-parte contacts with any party.  Doc 122, at 6-7.

In contrast, rather than go "outside the courtroom" to obtain evidence, this Court consulted its own publicly accessible records to assemble the evidence of debtor-in-possession counsel fees in all the chapter 11 cases in the District of New Mexico since the beginning of calendar year 2002.  The Court could have drawn on or cited this data without putting it into the table, but that would have left the Firm and every other person reading

the decision without the specifics of what that data showed –
unless of course the Firm or some other party went to the trouble
of compiling that data on their own.  The Court did not make up
any of that data; it merely took judicial notice of what was
already in the files.  Fed. R. Evid. 201.  (The Firm does not
dispute that any of the data was incorrect, at least as appears
from the Attorney Reconsideration Motion.)  Historical rates of
compensation, leading up to the date of the decision on rates in
this case, are relevant.  See Miller v. United States Trustee (In
re Miller), 288 B.R. 879, 883 (10th Cir. B.A.P. 2003) (court
should consider hourly rates of bankruptcy attorneys in its
jurisdiction and adjust for applicant's experience).  As with
Senior Counsel's criticism of this Court's reviewing the files on
its own in connection with the three orders concerning the Firm's
employment, the accountant, and exclusivity, the Court's going to
the trouble of examining and publishing relevant data upon which
it relied in making its decision is the sort of thing that, in
the Court's opinion, constitutes careful work, even if Senior
Counsel, and perhaps others, incorrectly take it as evidence of
bias.

    Similarly, another one of Senior Counsel's objections is
factually correct: the Court did enter certain orders without
giving the Firm further opportunity to object and without
conducting any further hearings.  For example, after discovering

that the Firm had failed to file a Rule 2014 statement, the Court on its own set aside the interim employment order. The Court did provide the Firm with the opportunity to file the Rule 2014 statement (which the Firm promptly did the next day) and be reinstated as counsel (albeit not retroactive to the date of the filing of the Motion to Employ Attorneys), doc 87 at 16, n. 15, but the Court did not set a hearing on the matter. Similarly, after the Firm had been afforded the opportunity to submit whatever evidence it wished, and after taking judicial notice of certain facts, the Court made a decision on Senior Counsel's hourly rate, again without setting a further hearing. If the Firm believes that there are certain facts that were overlooked or incorrect conclusions drawn, the Firm has available to it the standard remedies which target the problem much more accurately; to wit, a motion for reconsideration, which it has filed, or an appeal. Asking the Court to recuse itself from hearing certain matters is not a substitute for either of those. In re Bennett, 283 B.R. 308, 325 (10th Cir. B.A.P. 2002).

The Firm also objects to the Court's use of its rulings on exclusivity and the hiring of the accountant as part of the reason for denying the requested hourly rate. The Court will not repeat the findings and rulings in those decisions, other than to summarize them as being based on a finding of poor work by the Firm. The Firm concedes that a decision on an attorney's hourly

rate should be based on the quality of the attorney's work;
otherwise, there would be no point in the Firm having submitted
the affidavits from other counsel that described Senior Counsel
as, for example, "above average" with respect to her "knowledge
of the law, legal abilities, and skill". Arland affidavit (doc
40). What the rulings supply is concrete evidence of the quality
of the Firm's work, as opposed to the conclusory albeit laudatory
statements of the affidavits. Any court ought to be expected to
use the most probative evidence available, and thus using the
Firm's conduct so far in the case ought not be construed as
evidence of bias toward the Firm or Senior Counsel. This is not
to say that the Court did not consider the affidavits of the
other attorneys concerning Senior Counsel's qualifications. The
Court did consider all of the evidence submitted by the Firm, but
did not find those affidavits to be as persuasive as the Firm
does.

The Firm also argues that in effect the Court had already
decided the issue of the rate of compensation before issuing its
decision, and left the impression that the Court must have relied
on matters outside the record in making its decision. The Firm
cites this Court's remarks at the Year in Review CLE program on
March 4, 2005, and remarks made by the Court at a hearing on
April 5, 2005. Doc 122, at 7-11, 16-17.

What exactly the Court said at the CLE program has not been provided by the Firm; the CLE program was videotaped, as it is every year, and so the exact wording is available if the Firm wants to provide that record. The materials attached to this memorandum opinion were the basis of what this Court orally presented at that program. The relevant portions of the materials are at pages 190-91 and include the following:

> For some time now the issue of what rates attorneys should be allowed to charge has presented itself to both bankruptcy judges in this district. Specifically the issue has been that certain counsel have, for several years now, requested permission to charge hourly rates in excess of $200/hour. <u>I currently have a number of thoughts about that subject, which necessarily do not take into account all the contingencies and details that might arise in different cases. And of course, the decision in any given case will be based on the evidence and the legal argument presented.</u> Nevertheless, some of my thoughts on this subject are as follows....

(Emphasis added.) The Court was not announcing the decision in this case; indeed, the quoted portion of the materials, particularly the emphasized text, makes clear that the Court was <u>not</u> discussing any particular case. Instead, as the context makes clear, the Court was talking with the District's bankruptcy bar about a variety of practice and policy issues, including a general discussion of employment and fee issues (a staple of many bankruptcy CLE programs). As with the other practice and policy issues discussed by this Court with the bankruptcy bar over the

years,[12] the issue of hourly rates in excess of $200 per hour was one that was coming up with increasing frequency, as the quoted text states, and thus a subject ripe for discussion with the bar.

As is the case with many judges, this Court considers that participating in CLE programs to improve bankruptcy practice and increase knowledge is a worthwhile endeavor. Canon 4 of the Code of Judicial Conduct for United States Judges recognizes that such activities will take place and approves of them.[13] The Court is

_____

[12] This Court began these discussions almost as soon as the Court's judicial service began. The first presentation was at the 14th Annual Year in Review (1998), conducted in February 1999. Two of the presentations that have been available during the course of this case are currently on this Judge's publicly available homepage on the United States District/Bankruptcy Court website, nmcourt.fed.us, titled "Year in Review 2001" and "Year in Review 2002". These two presentations had previously been identified on the web page as "The Main List - I" and "The Main List – II" (as in the "main lists" of things to keep in mind when practicing in this Court). The Court's purpose in making these presentations to the bar and putting the written materials on the Court's web page is to make the Court's operations and procedures as transparent as possible to every attorney and every party who appears before the Court, regardless of where the attorney or party is from or how often the attorney or party has appeared before the Court.

[13] Canon 4: A Judge May Engage in Extra-Judicial Activities to Improve the Law, the Legal System, and the Administration of Justice.
A judge, subject to the proper performance of judicial duties, may engage in the following law-related activities, if in doing so the judge does not cast reasonable doubt on the capacity to decide impartially any issue that may come before the judge:
A. The judge may speak write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.
...
Commentary

(continued...)

Page 21 of   32

not inclined to deprive the bar of the opportunity to communicate with the Court, and vice versa, because one firm or attorney chooses to construe what is neutral commentary as evidence of bias.  *E.g.*, doc 122, at 10 ("On the one hand, [the comments by the Court] might be characterized as legitimate efforts to explain operative law, or what the judge thinks operative law might be.  On the other hand, this could be understood as reflection of a partiality, or as preview [sic] of a ruling on the merits of petitioner's motion...."  (Internal quotations omitted.)).

And as is also apparent from the text of the materials, the Court did not announce any *per se* rule that no counsel would be allowed fees in excess of $200 per hour.  In fact, the Court stated that rates in excess of $200 per hour would become the norm for some counsel in the future.  And the Court has allowed hourly rates of more than $200 per hour for chapter 11 debtor in possession counsel, as Senior Counsel admits in paragraph 24 of

---

[13](...continued)
Canon 4.  As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice.  To the extent that the judge's time permits, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law....

Case 04-15755-s11    Doc 243    Filed 02/09/06    Entered 02/09/06 12:20:00 Page 23 of 49

her affidavit.[14]   Doc 115.   <u>See</u> <u>In re Mach 2</u> (doc 98) and <u>In re Gilliland</u> (doc 56).

The Debtor also cites some unspecified remarks made by the Court on record on the April 5, 2005 trailing docket.[15] Disqualification Request at 4.  These remarks are cited for the proposition that, together with the CLE remarks, "[t]his produces the appearance that a decision was made in this case and announced as an opinion of the Court prior to the actual decision or publication of the decision, and may have been based on things outside of the record."  Disqualification Request, at 4-5.

As listening to the record (or reading the text) shows, the Court did indeed cite the opinion to other counsel, in order to inform other counsel of a pertinent ruling and to reduce counsel's preparation time.  (The latter was the same benefit the

---

[14] Pretty clearly Senior Counsel was relying on a hearsay account of the Court's presentation.

[15] The Debtor provided no more specific citation, and so the Court has reviewed the audio record of that morning's proceedings.  It is clearly the movant's obligation to provide a transcript or at least a specific citation to the record.  Such can easily be done; the movant needs merely to obtain the audio compact disk of the proceedings that morning (fee: $26.00) and locate the comments at issue.  However, because of the importance of this issue, the Court has searched the record itself for the comments in question.  What the Court believes are the comments that the Debtor is referring to are set out on the digital audio recording (using FTR technology) of a hearing on that date. Attached to this memorandum opinion is a two-page unofficial partial transcript of the colloquy between counsel in that case and the Court that contains the comments in question.  The Debtor can of course obtain a copy of that recording to confirm the accuracy of the transcription.

Page 23 of  32

Firm received in this case by being able to use the "market" materials from the <u>Mach 2</u> case; hearing exhibit list – doc 90.) Courts routinely cite counsel to cases that have already been decided; in a larger context, publication of decisions is largely how the common law works. In this case nothing at that April 5 hearing, even when taken together with the CLE remarks, produces any appearance that a decision was made beforehand. And to the extent that the Firm is arguing that the Court's remarks show that the Court had decided the compensation issue before issuing the opinion, the memorandum opinion on rates of compensation in this case was issued April 1, 2005 and docketed on April 2 (doc 87), before the April 5 hearing at which the quoted colloquy took place.

The Debtor is certainly correct in arguing what the test is: "disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." Note, Disqualification of Judges and Justices in the Federal Courts, 86 Harv. L. Rev. 736, 745 (1973). The Tenth Circuit employs the same standard.[16]

In support of its position, the Debtor has submitted the affidavits of Senior Counsel and of six other people, all stating that this Court's actions in this case leave them with the impression that the Court is not impartial. In this memorandum

---

[16] <u>United States v. Cooley</u>, 1 F.3d at 993.

opinion and in the orders the Court is simultaneously issuing in response to the motions to reconsider, the Court has addressed a number of its actions that the affiants consider to be evidence of bias.  However, the affiants fail to address those issues in sufficient detail to demonstrate that they "know all the circumstances".  Thus they fail to present any real evidence of partiality.

For example, Messrs Giddens (doc 119), Martin (doc 113), Maguire (doc 117) and Puccini (doc 112) in their affidavits talk about the late-filed request for the third extension of exclusivity but fail to mention, or more likely were not aware, that at the time the Court denied the motion three weeks later (doc 83) the ACE docket still reflected only the late filing and not the rejection from the bin[17] as the reason for the late

---

[17] In the current ACE system (to be discontinued and replaced by the CM/ECF system supported by the Administrative Office of the United States Courts in May 2006), items submitted for filing are transmitted by e-mail into a virtual "bin", where the submissions are reviewed by a docket clerk and then either filed or returned to the sender because of a major defect (e.g., the transmitting e-mail does not have attached the document proposed to be filed).  When an e-mail is sent to the Clerk's office with a document to be filed, the e-mail is receipted in and acknowledged by a separate document; an example is shown on pages 2 and 3 of Exhibit 1 attached to doc 104.  (A copy of Exhibit 1 is attached to this memorandum opinion for ease of reference.)  If the submitted item is filed by the clerk's office, it appears on the docket.  An example of that are the docket notations for doc 71 on March 9, 2005 (Third Motion for Extension of Exclusivity).  (A copy of the single page of the docket sheet which includes doc 71 is attached hereto.)  Nothing on the docket entry for doc 71 discloses the failed attempt to
(continued...)

filing.[18]  In his affidavit Mr. Martin states that he has never

seen a court decide a matter, absent a stipulation, at a

---

file the Third Motion on the previous day, March 8.

[18] Senior Counsel's affidavit mirrors almost all of the
statements of all the other affidavits (or, perhaps more
accurately, vice versa).  Senior counsel also states that she
asked for a hearing on the timeliness of the filing but the
Court, after granting that request, decided the matter two days
later without conducting a hearing.  Behles affidavit at
paragraph 18.  Doc 115.  The Court has reviewed the ACE docket
but is unable to find what it is that Senior Counsel is referring
to.  The ACE docket reflects in part as follows: (First) Motion
to Extend Exclusivity (doc 41), (First) Motion to Extend
Exclusivity (doc 43), Notice of Deadline to Object to doc 43 (doc
44), Second Motion to Extend Exclusivity (incomplete) (doc 46),
Notice of Deadline to Object to doc 46 (doc 47), Second Motion to
Extend Exclusivity (doc 55), Order Granting doc 41 (doc 53),
Order Withdrawing doc 53 and denying doc 55 (doc 58), Notice of
Deadline to Object to doc 43 (doc 59), Motion to Set Aside doc 58
(doc 60), Affidavit of Williams-Rawls (doc 61), Request for
Hearing on doc 60 (doc 62), Notice of Preliminary Hearing on doc
60 (doc 65), Minutes of Hearing on doc 60 (doc 70) (hearing
continued), Third Motion to Extend Exclusivity (doc 71), Notice
of Deadline to Object to doc 71 (doc 72), Notice of continued
Preliminary Hearing on doc 60 (docs 73 and 74), Letter from
Senior Counsel to Court concerning doc 70 (doc 75), Stipulated
Order between Debtor and Creditor and UST to reschedule
preliminary hearing on doc 60 (doc 76), Minutes of preliminary
hearing on doc 60 (doc 79), Order Denying doc 60 and doc 71 (doc
83), Second Affidavit of Williams-Rawls (referenced exhibit not
attached) (doc 93), Notice of [sic – should be Request for]
Hearing on doc 60 (doc 94), Motion to Set Aside doc 83 (doc 96),
Request for Hearing on doc 96 (doc 100), Request for Hearing on
doc 96 (and other motions) (doc 101), and Errata Notice to doc 93
with attached exhibit (doc 104).  Perhaps what Senior Counsel is
referring to is the preliminary hearing that took place on March
29, 2005 (minutes – doc 79), at which the Court orally denied the
Motion to Set Aside the Order not continuing exclusivity (doc 60)
and the written order implementing that oral ruling entered April
1, 2005 (doc 83).  In the future it would be helpful if the Firm
or Senior Counsel provided specific citations to the record to
the extent there are such instances in the record.

preliminary hearing. That statement simply reflects counsel's lack of experience; courts frequently decide matters at a preliminary hearing when the issue to be decided is not evidentiary or the relevant evidence is not disputed.

The affidavits of Messrs Giddens, Armstrong (doc 114), Martin, Maguire, and Corliss (doc 116) which see partiality in the Court's hesitation to employ the accountant, fail to explain how the Court can appoint a professional for the estate when the record on its face reflects that the accountant had a claim against the estate in violation of the disinterestedness requirement of § 327(a).[19] Nor do the affidavits of Messrs

---

[19] Paragraphs 17 and 20 of the Behles affidavit (doc 115) recite as follows:

17. At no time was there ever any disclosure that the court's clerk, James Burke, had been involved with the previous Chapter 7 filed by a Charles R. Jones, from the same area. Burke clearly was appointed the Trustee in this case on 8/18/93 and served as such. The Jones case is 93-12452, a copy of the docket showing said entry is attached hereto and incorporated herein as Exhibit A. Despite appearances, it is not the same Charles R. Jones.
...
20. In the 30 plus years I have been practicing law, I have never on one occasion had the court question the veracity of an accountant professional, without having in hand evidence upon which to base such questions. Counsel has been somewhat concerned that the reason that this was the case was that, in fact, there was a Chapter 7 at one point for a Charles R. Jones who had possibly been involved in a feed yard bankruptcy in Roswell which [sic] James Burke, the clerk for the Judge, was a trustee. At the time there had been some allegations that perhaps there had been some accounting problems. Counsel has no idea whether such a

(continued...)

Giddens, Martin, Maguire and Puccini explain why there needs to

be an evidentiary hearing concerning the Firm's employment when

it is clear from the record that the Firm never filed a Rule 2014

statement in the case.  Alternatively, it is not reasonable to

insist on the Firm's right to a final hearing when the record

clearly discloses a lack of compliance with the statute.

Similarly, the Corliss affidavit, which describes virtually

no facts but instead is comprised mostly of conclusions, and the

Armstrong, Martin, Giddens affidavits, all argue that lawyers

should be able to charge and clients should be allowed to pay

higher rates.  Whether that is true, it is not evidence of bias.

---

[19](...continued)
recollection on behalf of the Court's clerk [sic] might
have been the basis for such speculation, or if it was
merely speculation.  Nevertheless, this speculation
without evidence, casts aspersions on the accountant,
the Debtor, and would lead a reasonable man to believe
there is some prejudice or bias in that regard.
At the June 1, 2005 hearing on the Disqualification Request,
Senior Counsel explained that the Charles R. Jones of Carlsbad
that is proposed as an accountant in this case is not the same as
the Charles R. Jones of Roswell who was an accountant in
connection with a feedlot case in the early 1990's, but that the
"Carlsbad Mr. Jones" has suffered several cases of mistaken
identity and was concerned that this might be one of them.  The
Court assured Senior Counsel that this was not one such case, and
that in fact Mr. Burke had considerable difficulty even recalling
the case or the "Roswell Mr. Jones" described by Senior Counsel.
Tr. 1.23.21 to 1.28.00.  "A judge should not recuse ... on
unsupported, irrational, or highly tenuous speculation."  Hinman
v. Rogers, supra, 831 F.2d at 938-39.

It is ultimately the Court's decision,[20] and an appellate court's decision should there be an appeal, about what a reasonable person would or should think or believe in these circumstances.  That is, the "reasonable person" standard does not call for polling the bar but rather is the measure a court uses to assess the conduct at issue.  _E.g._, _compare_ § 523(a)(2)(B)(iii) (use of a statement in writing on which the creditor reasonably relied) _with_ § 523(a)(2)(A) (fraud exception to discharge requires only justifiable reliance).  _Field v. Mans_, 516 U.S. 59, 74-75 (1995).[21]  The decision is based on the courts' experiences; the circumstances of this case do not comprise a situation in which affidavits are required to supply to the Court information about a subject that the Court has no familiarity with or expertise in.  So while the recusal affidavits are in evidence and must be (and have been) considered, they are not in themselves determinative.  The Court determines what is reasonable to believe in the circumstances of

---

[20] "The bankruptcy judge before whom the matter is pending determines whether disqualification is required."  Advisory Committee Notes to the 1987 amendments to Rule 5004.

[21] The fact that the affiants look on those actions as evidence of bias does not of course make them so.  "Factual allegations do not have to be taken as true, and there is as much obligation for a judge not to recuse when there is no occasion to do so as there is to recuse when there is." _Lopez v. Behles (In re American Ready Mix Inc.)_, 14 F.3d 1497, 1501 (10th Cir.), _cert. denied,_ 513 U.S. 818 (1994) (Internal punctuation omitted.); _accord_, _Hinman v. Rogers_, _supra_, 831 F.2d at 939.

the case and therefore what constitutes an "appearance of impropriety".

What appears to have triggered the Disqualification Request at least in part is the Firm's determination to obtain a higher hourly rate for Senior Counsel, <u>see</u>, <u>e.g.</u>, the Corliss, Armstrong, Martin, Maguire, Giddens, and Behles affidavits, a tactic Senior Counsel has unsuccessfully attempted in a previous case. <u>See</u> <u>Bennett</u>, 283 B.R. at 325.

> [I]n assessing the reasonableness of a challenge to his impartiality, each judge must be alert to the avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.

<u>Artoc Bank and Trust, Ltd. v. Apex Oil Co. (In re Apex Oil Co.)</u>, 981 F.2d 302, 304-5 (8th Cir. 1992) (Citation omitted.). The Court's denial of a higher hourly rate does not evidence bias against the estate, the Firm or Senior Counsel. <u>Id.</u> at 324-25.

One cannot infer prejudice to a client from actions taken against the attorney in the case. <u>In re Shuma</u>, 124 B.R. 446, 449-50 (Bankr. W.D. Pa. 1990)(The protections of § 455 extends only to parties. "Prejudice toward counsel is not ordinarily imputed to the party and is not generally sufficient grounds for disqualification of a judge.") This is true even if counsel's basis for recusal relates to fees:

> [N]o objectively reasonable litigant could believe that a bankruptcy judge who follows consistent authority to rely on experience in fee hearings should therefore have his impartiality reasonably questioned. We who

Page 30 of 32

> serve on the Bankruptcy Court in this District are
> entitled to rely in part on our judicial and non-
> judicial experience in considering fee applications,
> and all do so to some degree.  Further, we have a duty
> to inquire into fees even when no objections are raised
> as noted at the outset of this opinion.  No objective
> litigant could reasonably conclude that these practices
> give rise to questions about impartiality.

In re Wyslak, 94 B.R. 540, 545 (Bankr. N.D. Ill. 1988).

"[J]udicial rulings alone almost never constitute a valid basis

for a bias or partiality motion." Liteky v. United States, 510

U.S. 540, 555 (1994).  The Firm's remedy is by way of appeal, not

a recusal motion.  In re Bennett, 283 B.R. at 325.

**Conclusion and Ruling**

For the reasons set forth in this memorandum opinion, the

Court finds no basis for recusing itself from continuing to

preside over all aspects of the case.

IT IS THEREFORE ORDERED that the Request for

Disqualification of Bankruptcy Judge in Proceeding or Proceedings

(doc 98) is denied.

Honorable James S. Starzynski
United States Bankruptcy Judge

I hereby certify that on February 9, 2006, a true and correct
copy of the foregoing was electronically transmitted, faxed,
delivered, or mailed to the listed counsel and/or parties.

Jennie D Behles
PO Box 7070
Albuquerque, NM 87194-7070

Alice Nystel Page
PO Box 608
Albuquerque, NM 87103-0608

Michael Newell
PO Box 1599
Lovington, NM 88260-1599

Rod M Schumacher
PO Box 700
Roswell, NM 88202-0700

Stephen Stuart Shanor
PO Box 700
Roswell, NM 88202-0700

Michael R Enright
280 Trumbull St
Hartford, CT 06103-3509

*James E. Burke*

**Ever More Advice and Thoughts from Judge Starzynski**

prepared for

**BANKRUPTCY 2004: The 20th Annual Year in Review**
March 4, 2005

The Honorable James S. Starzynski
United States Bankruptcy Judge
District of New Mexico

    The following continues my "More than You Probably Wanted to Know" monologues with practitioners at the Annual Year in Review programs, which deal largely with practice and procedures in my courtroom and chambers.

    These practice and procedure tips are in addition to those already listed on my chambers website. If you are interested in or need to know about these practice tips, then you need to also review the other practice tips at my chambers website. To get to my chambers website, go to www.nmcourt.fed.us, then click on U.S. Bankruptcy Court, then on Judges, then on Judge Starzynski's "homepage", and then start clicking on the various topics you want or need to read about. (Note that at that site there is a list of Judge Starzynski's decisions (pdf) filed chronologically and that there is a "last updated" line at the bottom of that page, which will help you remain current on what is filed on that page.) There is a wealth of other information on the chambers website as well, such as a "matters pending" list and the court calendar for the upcoming six months, which is usually updated once a week and is searchable. Spending some time at that site might be useful, especially if you are new to bankruptcy practice in this district.

    Note: items marked with a "*" indicate repeats from last year.

    1. For some time now the issue of what rates attorneys should be allowed to charge has presented itself to both bankruptcy judges in this district. Specifically the issue has been that certain counsel have, for several years now, requested permission to charge hourly rates in excess of $200/hour. I currently have a number of thoughts about that subject, which necessarily do not take into account all the contingencies and details that might arise in different cases. And of course, the decision in any given case will be based on the evidence and the legal argument presented. Nevertheless, some of my thoughts on this subject are as follows:

        a. Judge McFeeley has allowed recently rates of $225/hour and $250/hour respectively to specific counsel in certain cases. E.g., In re Robert and Mitzi Miller, No. 12-98-13174, Memorandum Opinion on Second Interim Fee Application, docketed June 14, 2004 (doc 337). I have been more reluctant to allow such higher rates (the Furrs case being the notable, and sui generis, exception, and unlikely to repeat itself, given the ultimate disposition of certain fee applications in that case), although I did recently allow one attorney to charge $225/hour in a certain case. Nevertheless, the rise of rates generally in the market for legal services, coupled with

Page 1 of 7

the dictate of Section 330(a)(3)(E) ("...whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."), foretells that rates in excess of $200/hour will be the norm for at least some counsel sometime before August 2012.

      b.  The process of determining rates generally occurs in connection with chapter 11 cases, in connection with employment applications for counsel for the debtor in possession or for the unsecured creditors committee. My practice has been to approve a rate at the beginning of the employment (and to have that rate clearly set out in the employment order so that anyone can easily find out what the rate is and so that there is no question about what the rate is), so that everyone in the case can (sort of) calculate or estimate what the fees will be, and so that the attorney can estimate during the case what the income will be for the purpose of running his or her business. Should the attorney want to increase the rate of compensation during the case, then the attorney can file an application to do so, with notice to the creditors. (But part of the language of Section 328(a) may come into play here: "[T]he court may allow compensation different from [that permitted in the employment order if the compensation terms and conditions] prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.") And my practice has also been by and large to approve a rate of up to $200/hour, with the proviso in the order that if the attorney wants a higher rate, the attorney can request a specific hearing on that issue to present evidence and legal (or other) argument for the increased rate.

      c.  In making the decision about a compensation rate, Section 330(a)(3)(E) refers to rates of comparably skilled practitioners in cases other than cases under this title. Case law also says to look at the rates being charged by attorneys in bankruptcy cases in that jurisdiction. E.g., <u>Miller v. United States Trustee (In re Miller)</u>, 288 B.R. 879, 883 (10th Cir. B.A.P. 2003) (court should consider hourly rates of bankruptcy attorneys in its jurisdiction and adjust for applicant's experience). What those standards are aiming at, it seems to me, is a prediction about the value to be brought to the estate by the professional in the form of the quality of the professional's work. That prediction is expressed in the form of the rate allowed, as determined by the market. The determination about the applicant's experience, in order to permit the adjustment called for in the <u>Miller</u> decision, will often be governed at least in part by the past performance of the applicant. The mere number of years in practice is not necessarily an accurate predictor of what value the professional will bring to the estate; after all, twenty years' of experience for one professional might be characterized by continual improvement, whereas another attorney might repeat the first-year learning experience twenty times.

      d.  Keep in mind also that if you are trying to establish a rate for legal work and you solicit affidavits from various attorneys who represent secured creditors, there are other counsel for secured creditors who work on a flat-fee or reduced-fee basis. Those rates are also part of the market.

      2.  If you are charging the estate $225/hour, or even $200/hour, you need to work efficiently and bill reasonably. For example, if it takes you a total of one minute to

Page 2 of 7

place a call to chambers and get a call back from chambers taking a hearing off the docket, you should not charge the estate .2 hour. Frankly, you probably should not be doing that even if you are only charging $150/hour. But it is particularly egregious if you are charging $200/hour or more; at that rate, you should be focusing your efforts on the bigger strategic aspects of the case and conducting the tough negotiations that will solve problems and avoid litigation, and leave your paralegal – better yet, your clerical help – to make phone calls like that. (After all, we deal with your secretaries every day and sometimes they are as well known to us as you are.)

3.   As you might have gathered, I tend to look at fee applications somewhat more closely when the rate being charged is relatively high (say, $200/hour or more, vs. $150/hour). I tend to look more closely also when the amount being charged is relatively high. For example, I don't devote a lot of time to examining chapter 13 fee applications for $2m to $2.5m, whereas one for $4-5m (or more) leads me to examine the docket and application and seek an explanation about why the cost was higher than average. For those of you submitting fee applications for higher amounts in chapter 13 cases, you can shorten the approval process by providing up front, especially in the application and repeated in the transmittal e—mail, the information that tells me, and the trustee and creditors, what led the application to be as high as it is. Understand that I don't have a problem with paying for the work done; in fact, attorneys need to get paid for doing the work, all the work, that is needed for their client's case. And depending on the client and the problems, that could be a little work or a huge amount of work. And it should all be paid for, as long as it was necessary and it was efficiently done. Which is what takes us back to the fee applications and the need for a full explanation of why the amount of the fee application is what it is.
     * More on Chapter 13 fee applications specifically: If your fee application asks for more than about $2,000 or so, you should provide a brief explanation in your fee application in order to permit me to facilitate my review of the application and approval of your fee order. If you do not do that, I am likely to send the order back and ask for the supplement. The supplement can be as little as an extra sentence; e.g., "Counsel had to spend several additional hours negotiating the claim of the IRS." These are things that are not immediately apparent from the time sheets. Of course, if your fee application is for substantially higher amounts, then a slightly longer explanation may be in order.

4.   Federal Bankruptcy Rule 7004(h) requires, in connection with adversary proceedings and contested proceedings under Rule 9014 and with certain exceptions, service by certified mail on certain institutions that are insured by the Federal Deposit Insurance Corporation. The following is some detail about complying with that requirement (compiled by Jim Burke):
          Rule 7004(h) discusses service "on an insured depository institution (as defined in section 3 of the Federal Deposit Insurance Act )". Section 3 of the Federal Deposit Insurance Act (FDI Act) is 12 U.S.C. Section 1813. Section 1813(c)(2) defines "insured depository institution" as "any bank or savings association the deposits of which are insured by the Corporation pursuant to this chapter."

"Bank" is defined in Section 1813(a)(1) as "any national bank and State bank, and any Federal branch and insured branch" and includes former savings associations that have converted from a savings association charter and is a Savings Association Insurance Fund member.  State banks includes banks, banking associations, trust companies, savings banks, industrial banks, or similar depository institutions that operate like an industrial bank, and other banking institutions that are engaged in the business of receiving deposits.  (Section 1813(a)(2).)   "Savings association" is defined in Section 1813(b)(1) as any Federal savings association, any State savings association, and any corporation that is determined to be operating in substantially the same manner as a savings association.  State savings associations include building and loan associations, savings and loan associations, homestead associations, and cooperative banks. (Section 1813(b)(3).)

So, it appears that pretty much any Federal or State bank or bank-like institution COULD be covered.   The best news, however, is that there is an internet site that lists all FDIC insured institutions.  **http://www3.fdic.gov/idasp/.**  So, it should be easy enough for any lawyer to check this site to see if certified mail is required.

However, nowhere is there a reference to credit unions in the FDI Act.  The Federal Credit Union Act, 12 U.S.C. 1751 et seq.  Section 1781 states that the National Credit Union Administration Board "shall" insure all federal credit unions and "may" insure state credit unions.  Section 1783 then establishes the "National Credit Union Share Insurance Fund" as a separate US Treasury fund to pay insurance related to credit unions.  So, credit unions have their own insurance fund, and Rule 7004(h), which refers to "insured depository institutions" as defined in the FDI act, would not apply to credit unions.

Note: On January 24, 2005, the Court sent out a Notice to Practitioners ("NTP") about this subject (No. 2005-1).

5.  Federal Bankruptcy Rule 7004(b)(3) requires, if you serve by mail (*i.e.*, post), that the service of an adversary proceeding complaint or a paper initiating a contested matter (Rule 9014) upon a corporation, partnership or other unincorporated association (presumably including a limited liability company) be by mailing a copy of the summons and complaint "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent if one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."  Actions included in this category of "contested proceedings" include motions to avoid liens, motions to value collateral, motions to assume or reject contracts or leases, objections to proofs of claim, and similar such requests for relief, but would presumably not include such things as service of a chapter 13 plan which proposes "merely" to pay less than the full amount of the unsecured claim of a creditor.  The new form chapter 13 plan, like the current form chapter 13 plan, has specific service provisions that comply with commonly used portions of Rule 7004(b).  And note that our current case management system has space for four lines for each address on the mailing matrix, such that you can insert "Attn Branch Mgr." or whatever other language is appropriate, which will allow you to use the mailing matrix for many notices to corporations et al. without having to separately address envelopes.

Note: On January 24, 2005, the Court sent out an NTP about this subject (No. 2005-1).

6.  And don't forget the extra service requirements if you want to sue or engage in a contested proceeding with the government; see Federal Bankruptcy Rule 7004(b)(4), requiring at a minimum service on the civil process clerk of the applicable office of the United States Attorney together with mailing a copy of the complaint and summons to the office of the Attorney General in Washington, D.C.

7.  Waiver of the 10-day stay of a modification of the stay provided by Rule 4001(a)(3): If the creditor does not ask for this relief in its motion, then I won't grant it in a default order (assuming I know when the order comes in that it has not been asked for).  On the other hand, if it is asked for explicitly in the motion, I will grant it in a default order.  And I will grant it if the respondent agrees to it, as in a stipulated order.  But I will not grant it at the end of a contested hearing (particularly an evidentiary hearing) in which I have granted stay relief, at least without a showing by the movant of a good reason for depriving the respondent of that protection.

8.  <u>White v. General Motors Corporation, Inc.</u>, 908 F.2d 675, 682 ((10th Cir. 1990) (<u>White v. GMC II</u>)("Part of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case.  An attorney need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is in applicable in a given situation....  The attorney's argument must be nonfrivolous, however; she runs the risk of sanctions if her only response to an affirmative defense is unreasonable...(if failure to make prefiling investigation is sanctionable so too is failure to disclose adverse results of investigation).").  (Citations omitted.)  This would seem to be particularly applicable, for example, to a trustee pursuing preferential transfers between a business and creditors who comes across evidence of payments constituting subsequent new value.  (Note: This admonition is not directed at the trustees and their counsel in this district, who as far as I can see certainly appear to be heeding this admonition.)

9.  As a reminder, attached are the current chapter 13 procedures for confirmation, dismissal and similar hearings and the form scheduling order in effect in my courtroom (<u>i.e.</u>, proceedings before me).  These procedures are the second attempt to work out with chapter 13 practitioners and the chapter 13 trustee's office a set of procedures that minimize the amount of time that counsel and parties have to spend in court and preparing for court.  The first attempt (also worked out with chapter 13 practitioners and the chapter 13 trustee's office) was met with some unhappiness on the part of just about everyone but us, but so far, these new procedures seem to be working well, or at least better.  The chapter 13 committee, co-chaired by Jerry Velarde and Kelley Skehen, is also working on a revised version of the "combo" chapter 13 plan, and on other issues, including any other procedures in my courtroom that could be improved.  So if you have any thoughts or concerns about the procedures in my courtroom, or about anything else having to do with chapter 13 cases, feel free to let us

Case 04-15755-s11    Doc 243    Filed 02/09/06    Entered 02/09/06 12:20:00 Page 38 of 49

or the co-chairs know.

10.  Debtors cannot use section 522(f) to avoid liens on vehicles.  See <u>Martinez v. Government Employees Credit Union of El Paso (In re Martinez)</u>, 22 B.R. 7 (Bankr. D. N.M. 1982).  Section 522(f)(B) is limited to nonpossessory, nonpurchase-money security interests in 1) household furnishings and household goods, 2) implements and tools of the trade, and 3) health aids.  Also, under 522(g), the general rule is that a debtor cannot exempt property recoverable by a trustee if the debtor's transfer of that property was voluntary.

11.  * Sharing Fees:  It appears that the practice of paying another attorney to do part of the work in a bankruptcy case, particularly covering the § 341 meeting in another town, apparently is fairly routine.  I have not decided whether such a practice constitutes fee sharing, and thus requires disclosure pursuant to Rule 2016(b), and the issue to date has not officially come to my attention, but you may want to consider that issue next time you file a Rule 2016(b) statement.  I certainly have no problem with the practice itself; in this state, such an arrangement may almost be a prerequisite to conducting an economically viable debtor-representation case.  The concern, rather, is disclosure.  So think about that in connection with any of your pending or future cases. (Perhaps this might be applicable as well if you pay someone to cover your cases in your absence.)

12.  * (and supplemented) Filing what you send us: One consequence of the "paperless" or, more accurately, "less paper" filing system now in effect is that there will not be filing on the "left side" of the file, since that refers to the paper files that the Clerk's office used to maintain, where it used to keep things like correspondence that were not treated as part of the pleadings.  Now, if you send something to the Clerk's office or my chambers such as, for example, a letter brief, a letter in response to an order to show cause, or a letter asking for some sort of relief (although the last item is what we receive from pro se parties rather than attorneys, usually), that document will be filed as a pleading and will appear on the ACE docket.  And this applies to e-mail transmissions which we send back to you for some reason but which we also deem of sufficient importance in the case such that, if there were a "left side" of the file, we would have filed a paper copy of the e-mail transmission there.

13.  * A reminder of the obvious: If the Clerk's office, including particularly a case manager, contacts you about getting something done so the case can be closed, or for some other reason, please have the good sense to do what you need to do, and do it promptly.

14.  * (supplement to last year's entry)  Hang up and drive: As an addition to my continuing focus on discouraging people from participating in hearings by telephone while operating a motor vehicle: A recent article in both The New York Times and the Albuquerque Journal (ensuring truly national publication) reported about a study done in Salt Lake City in which 20-year old drivers using cell phones drove as if they had the

Page 6 of 7

reflexes and reactions of 70-year olds. This is in addition to the article in The New York Times, Tuesday, July 1, 2003, page D8: In an experiment done in Spain, tests done on the road showed that talking with someone is more distracting than just listening, and trying to follow instructions (as in answering questions from the judge) is even worse. The ability to pay attention to what was happening on the road dropped by 1/3, and that result was the same when using a hands-free cell phone as well. In other words, when you are talking on a cell phone while driving, the problem is not so much that your hands are otherwise engaged as it is that your brain is otherwise engaged. So if you are driving when you are called for hearing, let me know and I will call you back shortly when you have had a chance to pull over safely and can talk.

15. Remember that if you have any complaints or concerns about how I or any of my staff are performing our duties, you may contact me or any chambers staff directly, or contact the Clerk of the Court, anonymously or otherwise, or contact Fred Hart, anonymously or otherwise. Professor Hart is the Judicial Performance Liaison who has agreed to serve in that role. See NTP 2004-1 (March 3, 2004). Of course, you can also complain directly to the Tenth Circuit pursuant to 28 U.S.C. Section 372(c) (see N.M.L.B.R. 9028-1 (August 13, 1996 edition) Disability or Misconduct of a Judge).

Page 7 of 7

REVISED CHAPTER 13 DAY PROCEDURES

These procedures will be in effect for chapter 13 days in Judge Starzynski's court beginning in January 2005.

1.  Debtor's counsel will request a preliminary hearing on confirmation for all cases in which an objection has been filed, in accordance with the requirements of the local rules.

2.  Debtor's counsel is encouraged to set a meeting with the trustee as soon as possible after requesting a hearing.

3.  At the hearing debtor's counsel will be expected to outline the issues for the court and report what steps have been taken to resolve the issues. Other counsel will be prepared to discuss their particular issues.

4.  All counsel will be prepared to state when the case will be ready for trial and the anticipated length of trial.

5.  A scheduling order will be completed at the hearing and subsequently entered. The trustee will bring partially completed orders for each case, and chambers will complete the necessary items. The order will include deadlines for matters such as filing of amendments, filing of tax returns, and the like. (See attached form.)

6.  On the date scheduled for the final hearing, all counsel shall be prepared to go forward with a trial on the merits, unless all counsel have signed off on an order resolving the matters at issue.

7.  Debtor's counsel is expected to arrange to confer, and to then actually confer, with any opposing parties, including particularly the trustee, far enough in advance of the final hearing so that a trial on the merits can be avoided where reasonably possible.

8.  Final hearing day will not have the "conferring break" as in the past. The only break will be the brief one (albeit perhaps more than one) ordinarily taken during the course of a trial day to attend to physical needs (e.g., stretching, coffee, etc.). Settlement negotiations and discussions should occur prior to hearing day. The trustee or her attorney will be available at 1:00 in the courtroom on hearing day to review last minute changes to confirmation orders or finalize orders that have been agreed to ahead of time.

9.  If the debtor is going to convert or dismiss a chapter 13 case, debtor's counsel should notify the other parties of that intended action as soon as reasonably possible.

Case 04-15755-s11    Doc 243    Filed 02/09/06    Entered 02/09/06 12:20:00 Page 41 of 49

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

IN RE:                                    No. 13-_____-_____S__

      Debtor(s).

## SCHEDULING ORDER FROM PRELIMINARY CONFIRMATION HEARING

THIS MATTER came before the Court for a preliminary hearing on Confirmation of the Chapter 13 Plan on _____. Counsel for the parties are listed below.

Final hearing on confirmation is set for _____, at _____AM/PM, in the:

      Animas Courtroom, 13th Floor, Federal Building and US Courthouse, 500 Gold SW, Albuquerque, NM 87102.

      United States Courthouse and Federal Building, 200 E. Griggs, Las Cruces, NM 88001

      United States Courthouse and Federal Building, 500 N. Richardson, Roswell, NM 88201.

Video Conferencing will be employed.   See instructions on Court web site.

The Plan will be amended and/or modified and served on creditors no later than: _____.

All unfiled tax returns will be delivered to counsel for the IRS, Department of Labor and/or Taxation and Revenue Department no later than :_____. If not, taxing authority counsel shall promptly file a certificate of non-compliance.

All documents requested by the Trustee shall be delivered to the Trustee no later than: _____.

Other: _____
_____
_____

The Trustee may submit for entry an order dismissing the case if the deadlines established herein are not met.

**The next page will contain**                  James S. Starzynski
**the names and addresses of all**             United States Bankruptcy Judge
**parties entitled to notice of this order**

**200**

Ct: You guys are in the more than $200 per hour fee - would like to get more than $200 per hour fee -- category?

Davis: [recording unintelligible]

Ct: Did you read the, have you gotten to see, Union Homes decision that we've entered yet? We just, we just published it last week, I think.

Davis: I read something about us being in the over 200 category in the future having to do that survey of the market and provide all that additional information that you talked to Giddens about....

Court: Look at this decision.  It's 05, 04-15755.

Davis: Is that going to tell me that I've got to do a lot of paperwork to get my over-200 fees approved?

Court: Actually, it saves you an enormous amount of work. [Laughter.]

Davis: Excellent.

Court: Well, you need to look at the....

Davis: Is this your decision, sir?

Court: Yes.  Yes.  It...you need to look at the attachment. It's about fifteen pages of what everybody's gotten in all the chapter eleven cases since the beginning of 2002...

Davis: Oh, great...

Court: So....

Davis: ...great.

Court: ...as well as a recitation of what I personally think is the relevant law.


Page 1 of  2

Davis: So it basically brings the history of all that forward, solves a lot of that uncertainty and at least tells us what we have to do.

Court: Well, yeah, you still will have to go out and get affidavits attesting to your brilliance.

[Laughter; record otherwise unintelligible.]

Court: I'm sure those flooded in... [unintelligible].

Court: It's just that that issue is coming up more and more.

Davis: Well, we are at the lowest ever if its at below $200 an hour that I can find around the country. But I'm sure you have heard that before.

Court: I'm sure. Well, I thought we could actually save the argument for when your case comes up.

Davis: That would be good, because my retirement plan was terminated a couple weeks ago in the Escala case, so now I'll...I'll be working for an extra couple years. So, It'll be good; I'll have time to learn that.

Court: Judge Rose used to call that the "widows and orphans" argument.

[Record unintelligible]

Court: It would always be, "Mr. Starzynski, don't give me the widows and orphans argument".

Davis: I don't know, maybe we need a new chapter in the bankruptcy code about that.

Court: Yeah, right; let's not say anything about that. OK, are we all through on Loraca or Loraca-related stuff?

6. I did not even change ▨filing date▨ as shown in the electronic versions of the Motion and the Notice for this reason.

FURTHER AFFIANT SAITH NOT.

_Tammi Wms Rawls_
TAMMI WILLIAMS RAWLS

Subscribed and sworn to before me on the 8 day of April 2005, by Tammi Williams Rawls.

_[signature]_
NOTARY PUBLIC

My commission expires:

| United States Bankruptcy Court - District of New Mexico | Electronic Document Submission Confirmation |
|---|---|

Home | Links | Help

Quick Links: Caption, Case Information, Docket, Related Cases

Tuesday, March 8, 2005

---

| **Document(s) Submitted By:** | Jennie Deden Behles |
|---|---|
| **Transaction Timestamp:** | Tuesday, March 08, 2005, 04:38:51:PM MST |
| **Confirmation Number:** | 41C8A96A-18C9-5BB5-1813-F8B4B7B50F32 |
| **Case Title:** | Union Home and Industrial, Inc. |
| **Case Number:** | 04-15755 |

**Lead Document Type:** Notice of

| **Document Description:** | Notice of Filing of third motion to extend exclusivity period and deadline for objections thereto |
|---|---|
| **Fee:** | N/A |

### Document Submissions

| Document | Status | Comments |
|---|---|---|
| File: noticeoffilingofmotion030805.pdf | Received | |

Quick Links: Caption, Case Information, Docket, Related Cases

Home | Links | Help

Tuesday, March 8, 2005

ACE 2-3-7

Please mail any comments to the ACE Development Team.



of 1                                                                                    03/08/2005 4:07 PM

*[handwritten:] Spoke to Sharon & she told me if it becomes an issue that we filed again the day after it was due to present the first attempt to the judge. ⟲ 03.09.05*

| | |
|---|---|
| Document(s) Submitted By: | Jennie Deden Behles |
| Transaction Timestamp: | Wednesday, March 09, 2005, 12:18:41:PM MST |
| Confirmation Number: | 60C53564-00A8-D081-D7EC-69DF442F5567 |
| Case Title: | Union Home and Industrial, Inc. |
| Case Number: | 04-15755 |
| Lead Document Type: | Notice of |
| Document Description: | Notice of filing of motion to extend exclusivity period and deadline for objections thereto |
| Fee: | N/A |

**Document Submissions**

| Document | Status | Comments |
|---|---|---|
| File: f:\WPDOCS\Union HI BR\Plead\3NotFilingMotExtendFilingDate030805wpd.pdf | Received | |

Please mail any comments to the ACE Development Team.

Wednesday, March 9, 2005

ACE 2-3-7



# United States Bankruptcy Court - District of New Mexico          Docket Report

**Home | Links | Help**                                      **Wednesday, February 1, 2006**

Quick Links:  Caption, Case Information, Claims, Docket,

Mailing List, Motions, Related Cases               Start << < 71 72 73 74 75 76 77 78 79 80 > >> End

---

| | |
|---|---|
| **Case Title:** | **Union Home and Industrial, Inc.** |
| **Case Number:** | **04-15755** |
| **Chapter :** | **11 , Voluntary , Asset** |
| **Judge Code:** | **SR** |
| **Assigned to:** | **Judge James S. Starzynski** |
| **First Meeting Location:** | **Roswell** |
| **Reference Number:** | **11 - 04-15755 - SR** |
| | |
| **Custom Codes:** | **PAPER  sr** |

| File Date | Entered On Docket | Document | Description | Reference |
|---|---|---|---|---|
| 03/09/2005 | 03/09/2005 | 71 | Third Motion By Debtor Union Home and Industrial, Inc. To extend exclusive period for filing a plan of reorganization to until 4/1/05 . [13k] [3 pages]<br><br>RE: [72]  Notice of Deadline to File Objections...  [10k] [1 page]<br><br>RE: [83]  Order Denying [71-1] Motion To extend...  [10k] [2 pages]<br><br>RE: [93]  Second Affidavit of Tammi Williams...  [10k] [2 pages] | Document Verification<br><br>Event code: Motion to Extend/Shorten Time<br><br>Entered by: jack |

Key:

| Symbol | Description |
|---|---|
| File Date | Date the document was filed with the clerk |
| Entered On Docket | Date the document was "entered on the docket" by the clerk's office |
| Document | *Number* assigned to the document by the clerk's office |
| Description | Title of the document and "docket entry" describing the document |
| Reference | Document Verification and other information |

Quick Links:  Caption, Case Information, Claims, Docket,
Mailing List, Motions, Related Cases

Start << < 71 72 73 74 75 76 77 78 79 80 > >> End

Home | Links | Help                              Wednesday, February 1, 2006
              Please mail any comments to the ACE Development Team.                    ACE-2-4-0